IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA,
DAVENPORT DIVISION

|  |  |  |
|---|---|---|
| IN RE<br>DIOCESE OF DAVENPORT,<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 06-02229-11<br><br>Chapter 11<br><br>Honorable Lee M. Jackwig |

**DEBTORS EX PARTE APPLICATION FOR AUTHORIZATION OF EMPLOYMENT OF LANE & WATERMAN LLP AS GENERALREORGANIZATION AND RESTRUCTURING COUNSEL FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**

Diocese of Davenport, an Iowa non-profit corporation and the debtor and debtor-in-possession in the above Chapter 11 reorganization case (the "Debtor" or "Diocese"), hereby applies, pursuant to 11 U.S.C. §§ 327, 328, 329 and 1107, Fed. R. Bankr. P. 2014 and 2016, for an Order authorizing the employment of the law firm of Lane & Waterman LLP ("the L&W Firm") as general reorganization and restructuring counsel for the Debtor in this Chapter 11 case (the "Reorganization Case").

This Application is supported by the verified statement of Richard A. Davidson, a member and partner of the L&W Firm (the "Davidson Statement"), the original of which is attached hereto as Exhibit "1" and incorporated herein by this reference and the record of this Reorganization Case. In further support of this Application, the Debtor represents as follows:

1.      On October 10, 2006 (the "Petition Date"), the Debtor filed its voluntary Chapter 11 petition for relief, thereby commencing the Reorganization Case. As of the Petition Date, the Debtor is operating its business and managing its properties as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.     It is essential to the Debtor's reorganization efforts that it be represented by counsel in the Reorganization Case who have not only bankruptcy expertise, but also expertise in numerous other practice specialties (including, but not limited to, exempt organizations law, finance and commercial law, corporate law, and the evaluation and conduct of commercial and personal injury litigation). Among general administrative matters, the Debtor may need legal services regarding: (i) negotiation and refinement of the plan of reorganization; (ii) selection and coordination of the efforts of the expert(s) which may be employed by the Debtor to ascertain the value(s) of the Debtor's assets, and to perform such other analyses as may be presented by the creditors and other interested parties in the Reorganization Case; (iii) evaluation of personal and real property issues; (iv) evaluation and advice on the unique aspects of the Reorganization Case and the relationship between the Bankruptcy Code and applicable law and the law governing the activities of a Roman Catholic Diocese; (v) evaluation and prosecution, where appropriate, of any claims which may be asserted by the Debtor; and (vi) such other activities as it may be reasonable and proper for the Debtor to undertake in order to protect the Debtor's assets and that are related to the administration of the Debtor's estate.

3.     As evidenced by the Davidson Statement, the L&W Firm has the accessibility, experience, expertise, and resources that enable it to provide the multi-faceted legal services needed by the Debtor in its reorganization matters. Therefore, the Debtor desires to employ the the L&W Firm as its counsel and has asked the L&W Firm to represent the Debtor in such capacity.

4.     The Debtor has made arrangements for employment of the L&W Firm as its counsel, for professional compensation of the L&W Firm, and for reimbursement of the L&W Firm's costs, disbursements and expenses, subject to approval by the Bankruptcy Court. Such arrangements regarding the L&W Firm are described in the Davidson Statement, and these are

the only arrangements between the L&W Firm and the Debtor regarding this matter. By the signature of the authorized representative for the Debtor on this Application, the Debtor expressly acknowledges, understands, and agrees to all of such arrangements, subject only to approval by the Bankruptcy Court.

5.     As set forth in the Davidson Statement, the Debtor has paid the L&W Firm a retainer in the amount of $34,718.23 (the "Retainer") which has been deposited in a segregated trust account as set forth in the letter of engagement which is attached to the Davidson Statement as Exhibit "A" (the "Engagement Letter").

6.     Subject to approval of the court, the Debtor and the L&W Firm have made the following agreements regarding employment of the L&W Firm, compensation of the L&W Firm for professional services rendered and reimbursements of the L&W Firm for costs, disbursements, and other expenses which it incurs in this matter:

   a.     The Debtor has agreed that the L&W Firm is employed as its general restructuring and bankruptcy counsel.

   b.     The Debtor and the L&W Firm have agreed that the L&W Firm will charge for its professional services at hourly rates set forth in the Davidson Statement, and that the L&W Firm will be paid for its costs incurred in representing the Debtor in this matter. The Engagement Letter is the only agreement of the Debtor and the L&W Firm regarding professional compensation and reimbursement of costs.

   c.     Because of the size and complexity of the Reorganization Case, it will be necessary to staff this matter with a number of attorneys and legal assistants in order to adequately address and respond to the various matters and issues in the Reorganization Case. the L&W Firm will attempt to avoid, to the extent possible, duplication of effort by the attorneys assigned to the Reorganization Case. In accordance with their respective years of experience and hourly rates, and subject to their schedules and other commitments, the L&W Firm will allocate the services of Mr. Davidson to provide the greatest benefit to the Debtor (and the estate) in a cost-effective manner.

   d.     In addition to the involvement of foregoing attorneys, other the L&W Firm attorneys may be involved and render services in the Reorganization Case. Because of the numerous and complex issues in the Reorganization Case as

well as the time parameters involved, these other attorneys may be utilized, where appropriate and as needed, to assist with case management and administration; to assist in specialized matters such as financing and litigation issues; to research and analyze discrete bankruptcy issues; and to prepare pleadings. However, to the extent attorneys will be used who do not have a detailed and in-depth familiarity with the Reorganization Case, to the greatest extent possible they will be used in instances when a detailed and in-depth familiarity with the Reorganization Case will not be necessary, such as for discrete research projects or for basic drafting of pleadings or for limited specialized legal issues.

       e.      In addition to the attorneys who will be used in the Reorganization Case, the L&W Firm will provide services to the Debtor through the use of legal assistants. The legal assistant services will be for substantive legal services rendered in conjunction with the Reorganization Case and will not be for clerical services.

7.      The services provided by the L&W Firm will not duplicate or overlap the efforts of any other professional retained by the Diocese. In particular, the Diocese has sought or will be seeking to employ the following professionals:

      (a)      McGladrey & Pullen P.C. (accountants)
      (b)      Donald Stanforth (investment advisor)

8.      McGladrey & Pullen P.C. is an accounting firm that will be employed to provide continuing professional accounting services. Donald Stanforth is an investment advisor who will be employed to provide investment advice to the Debtor. The services to be provided by each of these professionals are separate and different from the services to be provided by the other professionals and each is essential to the Diocese's reorganization efforts.

9.      By the signature of the Debtor's Chief Financial Officer, the Debtor expressly acknowledges, understands and agrees to all of the arrangements referenced in the Davidson Statement and the exhibit thereto, subject only to approval by the Bankruptcy Court.

10.      Except as may be disclosed in the Davidson Statement and to the best of the Debtor's knowledge, information and belief, the L&W Firm does not have any connections with the Debtor in the Reorganization Case, the creditors of the Debtor's bankruptcy estate any other parties in interest or their respective attorneys and accountants, the United States Trustee or any

person employed by the Office of the United States Trustee. To the best of the Debtor's understanding, the information disclosed by the L&W Firm in the attached Davidson Statement does not preclude the L&W Firm from representing the Debtor under applicable law and ethical rules. To the extent that the L&W Firm has been able to determine, the L&W Firm does not have any connection to any of the creditors or other parties in interest in the Reorganization Case except as disclosed in the Davidson Statement. As further reflected in the Davidson Statement and in accordance with 11 U.S.C. §§ 101(14), 327, and 328, the L&W Firm is "disinterested"; the L&W Firm does not represent any entity in the Reorganization Case which has any interest adverse to the Debtor; the L&W Firm does not hold an interest adverse to the Debtor in the Reorganization Case; and the L&W Firm will not represent any such other entity which may have an interest adverse to the Debtor or its estate in the Reorganization Case during the L&W Firm's employment as counsel for the Debtor.

11.     The Debtor respectfully requests immediate consideration of this Application. The continuance of the Debtor's operations and negotiations with creditors, as well as the Debtor's obligations under the Bankruptcy Code, require that the Debtor have the immediate and substantial assistance of counsel in the Reorganization Case.

12.     A true and correct copy of the this Application for Authorization for the Employment of Lane & Waterman LLP as General Reorganization And Restructuring Counsel for the Debtor and Debtor-in-Possession; and Bankruptcy Rules 2014(a) and 2016(b) Statements has been served on the U.S. Trustee.

WHEREFORE, the Debtor respectfully requests that the Bankruptcy Court enter its Order (i) granting the relief requested by the Debtor in this Application; (ii) authorizing the employment of Lane & Waterman LLP as counsel for the Debtor effective as of the Petition Date; and (iii) granting such other and further relief as is proper and just concerning this

Application. A form of Order is submitted herewith for the Bankruptcy Court's review and

consideration.

Respectfully submitted,

DIOCESE OF DAVENPORT

By     /s/ Charlene Maaske
       Charlene Maaske
       Chief Financial Officer

Prepared and Submitted by:
Lane & Waterman LLP
220 N. Main St., Suite 600
Davenport, IA  52801
563-333-6624

By: /s/ Richard A. Davidson
       Richard A. Davidson
       Proposed Attorney for Debtor
       The Diocese of Davenport

EXHIBIT "1"

<u>Davidson Statement</u>

IN THE U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| DIOCESE OF DAVENPORT, | ) | Case No. 06-02229-11 |
| | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | Honorable Lee M. Jackwig |

**VERIFIED BANKRUPTCY RULE 2014(a) AND 2016(b) STATEMENT OF
RICHARD A. DAVIDSON WITH RESPECT TO DEBTOR'S APPLICATION
FOR AUTHORIZATION FOR EMPLOYMENT OF LANE & WATERMAN LLP
AS BANKRUPTCY COUNSEL FOR THE DEBTOR AND DEBTOR IN
POSSESSION, INCLUDING STATEMENT OF DISINTERESTEDNESS**

The undersigned, Richard A. Davidson, hereby declares under penalty of perjury pursuant to Fed. R. Bankr. P. Rules 2014(a) and 2016(b), as follows:

1.      I am a practicing lawyer and partner in the law firm of Lane & Waterman LLP ("Lane & Waterman") which has offices in Iowa and Illinois. I am authorized by Lane & Waterman to make the statements which I have made herein on behalf of Lane & Waterman with respect to the <u>Debtor's Application for Authorization to Employ Lane & Waterman as Bankruptcy Counsel for the Debtor and Debtor in Possession</u> (the "Application") in this Verified Statement in support of the Application (the "Davidson Statement") filed in the Chapter 11 Reorganization Case (the "Reorganization Case") of the Diocese of Davenport.

2.      I have been licensed to practice law before all state and federal courts in Iowa, including the Iowa Supreme Court and the United States District Court (including the Bankruptcy Court) for the Southern District of Iowa since 1984. I am also licensed to practice before the state and federal courts of Illinois and I am admitted to practice before the United States Court of Appeals for the Eighth Circuit.

3.     The firm of Lane & Waterman was established in 1902 and changed its name to Lane & Waterman LLP in 2004.  I have practiced law with Lane & Waterman since 1985. My practice is concentrated in commercial law, bankruptcy law and reorganization work-outs.  I have provided bankruptcy representation to numerous clients in business bankruptcy cases.

4.     Lane & Waterman is a general practice law firm of approximately 40 lawyers whose specialty practice areas include, among other things, bankruptcy, exempt organizations, commercial finance, labor and employment, personal injury and real estate. Like myself, Lane & Waterman has substantial experience in providing representation in bankruptcy cases and has provided representation in numerous and substantial bankruptcy cases in the past.

5.     The following disclosures are made with regard to the pre-petition retainer received by Lane &  Waterman:

a.     Prior to the commencement of the Reorganization Case, Lane & Waterman was retained by the Diocese of Davenport, (the "Diocese") to provide legal advice regarding its financial affairs.  After the representation commenced and prior to the commencement of the Reorganization Case, Lane & Waterman received a retainer of $46,834.73 (the "Retainer").

b.     The Retainer has been placed in a Lane & Waterman's lawyer's trust account.

c.     The Retainer is an advance against fees for services to be rendered and costs to be incurred by the firm in lead up to and during the Reorganization Case as set forth in more detail in the Engagement Letter, a true and correct copy of which is attached hereto as Exhibit "A" and by this reference incorporated herein (the "Engagement Letter"). The balance of the Retainer as of the Petition Date is $34,718.23. Lane & Waterman will have the right, in its discretion and option (exercisable in its sole and absolute discretion): (i) to apply the Retainer wholly or partially to pay its allowed professional compensation and expense reimbursements; and/or (ii) to obtain such payment from available assets of the Diocese's estate.

d.      The Retainer is reasonable particularly in light of the size of the Reorganization Case and the unique and complex issues related to the Reorganization Case.

e.      Any portion of the Retainer that exceeds the amount of all fees earned and costs incurred by Lane & Waterman as approved by the Court, is fully refundable.

f.      Lane & Waterman will comply with all orders of the Court in withdrawing any funds from the Retainer.

6.      In accordance with 11 U.S.C. § 504 and as required by Rule 2016, Fed. R. Bankr. P., the undersigned expressly confirms that no agreement or understanding exists between Lane & Waterman and any other person for the sharing of any of the compensation for professional services rendered or to be rendered to the Diocese in or in connection with the Reorganization Case; furthermore, Lane & Waterman has not made, and will not make, any sharing of compensation, any agreement to share compensation or any other agreement prohibited by 11 U.S.C. § 504 and/or 18 U.S.C. § 155. All agreements relating to the representation of the Diocese by Lane & Waterman and the hourly rates and charges for costs to be reimbursed are as disclosed in the Engagement Letter.

7.      Lane & Waterman intends to apply for compensation for professional services rendered in connection with the Reorganization Case subject to approval of the Bankruptcy Court and in compliance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local Bankruptcy Court's orders, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges that are incurred. The hourly rates to be charged to the Diocese are consistent with (and in some cases lower than) the rates Lane & Waterman charges in bankruptcy and non-bankruptcy matters of this type. The undersigned will be the lead bankruptcy attorney responsible for the Reorganization Case. My hourly rate for this matter is $230 per hour. R. Scott Van Vooren, another partner in Lane & Waterman, will work with me on this matter and his hourly rate for this matter is $230 per hour. Catherine E. Hult, a partner in Lane & Waterman, will work on this matter and her hourly rate

for the matter is $190 per hour. Other attorneys may also work on matters involving the Reorganization case at a rate ranging from $230 per hour to $150 per hour for associates.

8.      Based on a conflicts search conducted to date and described herein, to the best of the undersigned's knowledge, neither the undersigned, Lane & Waterman, nor any partner, nor any associate, insofar as the undersigned has been able to ascertain, has any connection with the Debtor, its creditors or any other parties in interest, or their respective attorneys and accountants, nor with the United States Trustee or any person employed in the office of the United States Trustee.

9.      Lane & Waterman is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14), as modified by 11 U.S.C. § 1107(b), in that neither Lane & Waterman, nor any of its partners or associates:

a.      are not creditors or insiders of the Debtor;[1]

b.      are not and were not, within two years before the date of filing of the Reorganization Case, a director, officer, or employee of the Debtor.

10.     There is no connection between myself or any attorney at Lane & Waterman and any United States Bankruptcy Judge in the  Southern District of Iowa or to the United States Trustee or any employee thereof.

11.     As of the Petition Date, the Diocese does not owe Lane & Waterman any amounts for legal services rendered before the Petition Date. All amounts were paid in the ordinary course of the business relationship between the Diocese and Lane & Waterman (or were written off and not paid) and, therefore, to the best of my knowledge, information and belief, would not constitute a preference with the meaning of 11 U.S.C. § 547.

12.     The investigation of disinterestedness made by Lane & Waterman prior to submitting this statement consisted of following: Lane & Waterman's established procedures for

---

[1] The Debtor does not have any securities. Accordingly, 11 U.S.C. § 101(14)(B) and (C) do not apply in the Reorganization Case.

conducting conflict searches based upon information provided to it by the Diocese and consisting of, among other things, the master mailing matrix filed in this case. Lane & Waterman also searched the entire vendor list provided by the Diocese as to whether or not such vendors were or might be creditors in the case. The search was conducted in accordance with procedures established at Lane & Waterman and utilized with respect to all matters in which the firm has been requested to provide representation. Following the employment of Lane & Waterman and through the pendency of this case, supplemental disclosure will be made to the Bankruptcy Court if necessary.

13.     There are a number of vendors with whom the Diocese has conducted business over the years who were or are represented by Lane & Waterman at one time. However, to the best of the undersigned's knowledge, information and belief, none of these vendors are currently creditors or parties in interest in the Reorganization Case.

14.     With respect to Lane & Waterman's connection with the Diocese, its creditors, any other parties in interest or their respective attorneys or accountants, the undersigned hereby represents and confirms the following to the Diocese and the Court that the following, to the best of the undersigned's knowledge, information and belief and is a complete description of all of Lane & Waterman's connections with the Diocese, principals of the Diocese, insiders, the Diocese's creditors, any other party or parties in interest, and their respective attorneys and accountants:

a.     The Diocese maintains a banking relationship with Quad City Bank & Trust Company ("QC Bank") although Lane & Waterman is informed and believes that QC Bank is not a creditor in the Reorganization Case. Lane & Waterman has never represented QC Bank with respect to any matters related to or arising out of the relationship between QC Bank and the Diocese (although Lane & Waterman has occasionally represented Quad City Bank on other matters unrelated to the Diocese).

b.     The Diocese has filed a motion to maintain its deposit accounts with QC Bank. Lane & Waterman is unaware of any conflict between QC Bank and the Diocese and both

have consented to the representation of the Diocese in this case. In the event that an adverse relationship does arise between QC Bank and the Debtor, QC Bank has retained other counsel who will represent it in any such dispute.

      c.     The Diocese obtains its electric and gas utility services from MidAmerican Energy Company ("MidAmerican"). Lane & Waterman has represented and continues to represent MidAmerican in matters completely unrelated to the Diocese. To the extent that there are any disputes or any matters which would give rise to any conflict between the Debtor and MidAmerican, MidAmerican will use other counsel.

      d.     Lane & Waterman has in the past represented Congregation of the Humility of Mary with respect to matters not involving the Diocese. Humility of Mary has a real estate ground lease with the Diocese. Lane & Waterman has not represented Humility of Mary with respect to this real estate lease. Humility of Mary will obtain other counsel who will represent it in connection with matter which may arise with the Diocese in the Reorganization Case.

      15.     Lane & Waterman will periodically review its files during the pendency of the Reorganization Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, Lane & Waterman will use reasonable efforts to identify any such further developments or relationships and will promptly file a supplemental affidavit as Fed. R. Bankr. P. 2014(a) requires.

      16.     The Diocese and Lane & Waterman do not believe that any of the matters disclosed in the preceding paragraphs are materially adverse to the Debtor's estate or any of its creditors nor do such matters present any actual or potential conflicts of interest affecting Lane & Waterman's representation of the Diocese. In addition, pursuant to 11 U.S.C. § 327(c), Lane & Waterman is not disqualified from acting as counsel merely because it now represents or has in the past represented certain creditors and other parties in interest in unrelated matters. As stated, Lane & Waterman has never represented any such potential creditors or parties in interest with respect to any matters involving the Diocese. Furthermore, Lane & Waterman is a "disinterested person" within the meaning of 11 U.S.C. §§ 101(13), 328 and 1103(b).

17.     To the best of Lane & Waterman's knowledge, information and belief, Lane & Waterman is not a creditor or an insider of the Diocese. All fees and costs incurred by Lane & Waterman prior to the Petition Date were paid prior to the Petition Date in accordance with the terms of the Engagement Letter or were written off.

18.     Upon information and belief, Lane & Waterman neither holds nor represents any interest materially adverse to the interest of the estate or of any class of creditors, by reason of any direct or indirect relationship to, connection with, or interest in, the Diocese, or for any other reason.

19.     Subject to the court's authorization of the Diocese's employment of Lane & Waterman, it has been agreed that Lane & Waterman will represent the Diocese in Reorganization Case and in other related matters.

20.     Based upon the foregoing, Lane & Waterman is eligible to be employed as general bankruptcy counsel for the Diocese.

21.     After conducting or supervising the investigation described above, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct, I have made all of the foregoing statements on behalf of Lane & Waterman in support of the Application and in compliance with Rules 2014(a) and 2016(b), Fed. R. Bankr. P. If called to testify, I would testify as I have stated herein.

Dated October 10, 2006

Richard A. Davidson

- 7 -

Joe R. Lane (1858-1931)
Charles M. Waterman (1847-1924)
William C. Davidson*
C. Dana Waterman III
Charles E. Miller*
James A. Mezvinsky
David A. Dettmann*
Dana M. Craig*
Terry M. Giebelstein*
Rand S. Wonio
Curtis E. Beason
Robert V. P. Waterman, Jr.*
Peter J. Benson*
Michael L. Noyes
R. Scott Van Vooren*
Thomas D. Waterman*
John D. Telleen*
Richard A. Davidson*
Michael P. Byrne*
Edmund H. Carroll*
Jeffrey W. Paul*
Theodore F. Olt III*
Cameron A. Davidson*
Judith L. Herrmann*
Robert B. McMonagle*

# LANE & WATERMAN LLP

Established 1854

---

220 North Main Street, Suite 600
Davenport, Iowa 52801-1987
Telephone (563) 324-3246
Fax (563) 324-1616

Writer's Direct Dial: (563) 333-6624
E-Mail Address: rdavidson@l-wlaw.com

October 5, 2006

Christopher J. Curran*
Joseph C. Judge*
Jason J. O'Rourke*
Troy D. Venner*
Courtney M. Kay-Decker*
Troy A. Howell*
Diane M. Reinsch*
Catherine E. E. Hult*
Mikkie R. Schiltz*
Diane E. Puthoff*
Stacey L. Hawke*
Wendy S. Meyer*
Alissa D. Klein

Of Counsel
Donald H. Sitz
Robert A. Van Vooren*
Thomas N. Kamp

*Also Admitted in Illinois

224 18th Street, Suite 500
Rock Island, Illinois 61201-8739
Telephone (309) 786-1600
Fax (309) 786-1794

Ms. Charlene Maaske
Chief Financial Officer
Diocese of Davenport
2706 North Gaines Street
Davenport, IA 52804

Re:   Bankruptcy Legal Counsel

Dear Char:

We have previously sent the Diocese of Davenport (the "Diocese") and engagement letter when our original representation of the Diocese commenced (the "Standard Terms of Engagement"). You accepted the Standard Terms of Engagement and we have been providing legal services to the Diocese in connection with matters related to the financial affairs of the Diocese and related matters since that time and previously. We have jointly determined that it may be in the best interest of the Diocese to file a petition pursuant to Chapter 11 of the Bankruptcy Code in order to facilitate the Diocese's reorganization of its financial affairs (the "Reorganization Case"). We anticipate filing the Reorganization Case around October 10, 2006. Therefore, given the present circumstances and pending Reorganization Case, we have jointly determined that it is appropriate to modify our terms of engagement. We again thank you for your expression of confidence in Lane & Waterman LLP ("Lane & Waterman"). This letter serves to amend and supplement the Standard Terms of Engagement.

1.   Client and Scope of Representation. In addition to the services we have been providing to the Diocese, our services for the Diocese will now also include prosecution of the Reorganization Case before the United States Bankruptcy Court for the Southern District of Iowa.

2.   We will continue to provide services in the Reorganization Case as we have previously, on the basis of an hourly rate multiplied by the time spent on your behalf,

# LANE & WATERMAN LLP

measured generally in 10ths of an hour. The billing rates for attorneys and paralegals currently working on your behalf are set forth on Exhibit "A" attached hereto.

3.      Because of the impending Reorganization Case, we have started billing the Diocese on a more frequent basis and the Diocese has agreed, in exchange for contemporary services, to pay the bill shortly after receipt. This is in accordance with our standard arrangements in matters of this type. We have agreed that before Lane & Waterman files a petition for commencement of the Reorganization Case, all statements for services rendered and expenses incurred which have been provided to the Diocese must be paid so that at the time of the commencement of the Reorganization Case, Lane & Waterman is not a creditor of the Diocese. You have agreed to the procedure and provided us with a retainer which we will apply to outstanding billings prior to the filing of the bankruptcy petition.

4.      The Diocese has agreed that the balance of the retainer previously provided to Lane & Waterman, all of which has been deposited into Lane & Waterman's trust account, will continue to be held in our trust account. Once the Reorganization Case commences, Lane & Waterman will provide to the Bankruptcy Court from time to time, usually monthly, for allowance of its professional compensatio fees and expense reimbursements. Subject to the orders of the Bankruptcy Court, Lane & Waterman will have the right and option (exercisable in its sole and absolute discretion): (i) to apply the retainer fully or partly to pay its allowed professional fee compensation and expense reimbursements; and/or (ii) to obtain such payment from available assets of the Diocese estate.

5.      Based on our current knowledge, we are not aware of anything which precludes Lane & Waterman from undertaking this representation and in accordance with the applicable provisions of the Bankruptcy Code, and applicable rules of ethics for our profession. We have informed you that Lane & Waterman currently represents Quad City Bank & Trust Company in several matters unrelated to the Diocese. We have determined that the interests of Quad City Bank and the Diocese and the Reorganization Case are not, and should not, become adverse. However, we have agreed with you and Quad City Bank that in the event any unforeseen dispute with Quad City Bank, we would continue to represent the Diocese in such matters and Quad City Bank would engage other counsel. In addition, we have informed you that Lane & Waterman currently represents MidAmerican Energy Company in other matters unrelated to the Diocese and the Reorganization Case. Again, we have agreed with you and MidAmerican Energy Company that in the event any unforeseen dispute with MidAmerican, we would continue to represent the Diocese in such matters and MidAmerican would engage other counsel. We have also informed you that Lane & Waterman represents other clients who are insured by your insurer, St. Paul Travelers, in matters totally unrelated to the Diocese and the Reorganization Case. You have advised us that the Diocese intends to engage special insurance coverage counsel to represent it in connection with its insurance coverage for the tort claims aserted against it and all negotiations and/or litigation with the Diocese's insurance companies will be handled by special counsel for the Diocese. We are not aware of any issues in the Reorganization Case which would preclude or limit our representation of the Diocese in any unrelated matters.

# LANE & WATERMAN LLP

      6.      Further, in addition there are a number of vendors used by the Diocese, from time to time, who are presently not creditors, which Lane & Waterman has and continues to represent on matters unrelated to the Diocese. We are not aware of any issues in the Reorganization Case which would preclude our representation of the Diocese. We have further informed you that Lane & Waterman has represented insureds of St. Paul and Travelers in matters unrelated to the Diocese and the Reorganization Case. As we have discussed with you, the Diocese has agreed to engage special counsel to represent it in connection with possible insurance coverage negotiations and litigation. The Diocese has agreed to engage such special counsel and application will be made to the Court to employ such special counsel for the Debtor and Debtor in Possession. Please let us know when you have selected insurance coverage counsel and we will prepare the application for employment.

      This letter amends the Standard Terms of Engagement and, except as amended and supplemented by this Letter, the Standard Terms of Engagement and the term of engagement of Lane & Waterman previously provided to the Diocese is hereby confirmed and the terms and conditions are incorporated herein by reference

      Very truly yours,

      LANE & WATERMAN LLP

      By

         Richard A. Davidson

RAD/skp

# LANE & WATERMAN LLP

Exhibit "A"

## LANE & WATERMAN ATTORNEY'S FEE RATES PER HOUR

| Attorney | Rate per hour |
|---|---|
| Richard A. Davidson | $230.00 |
| R. Scott VanVooren | $230.00 |
| Catherine E. Hult | $190.00 |
| Other Partners | $190.00 to $215.00 |
| Associates | $150.00 |
| Paralegals | $ 90.00 |

# Lane & Waterman

## Standard Terms of Engagement

We are pleased that you have retained Lane & Waterman to provide legal services. This document sets forth standard terms of engagement concerning how our services will be provided. Please review this document carefully and retain it with your files. If you have any questions about how our legal services will be provided, how you will be billed, the scope of our representation or any other matter related to this document, please contact a member of the firm promptly.

**Your Primary Attorney.** Typically one attorney will act as your primary contact with the firm. Your primary attorney, in the exercise of his or her professional judgment, may involve other lawyers, legal assistants or non-legal professionals possessing special knowledge or experience or who may perform work in a more efficient manner.

**The Scope of Our Services.** Our engagement letter to you sets forth the specific matter for which representation will be provided. We will zealously represent you in a professional and ethical manner. If you have any questions regarding our scope of representation, please contact your primary attorney.

At times we may be called upon to express opinions of law or anticipated outcomes. Such opinions are limited by our knowledge of the facts at the time the opinion is rendered, the present state of the law and, at times, factors that are unknown or beyond our control. Although we will use our best professional judgment, we cannot guarantee the outcome of any matter.

**The Client.** Lane & Waterman will provide representation for only the person(s) or entity identified in our engagement letter. In matters related to corporations, partnerships and other entities, our representation does not extend to officers, directors, employees, shareholders, partners, members, or other individuals. Additionally, our representation of an entity does not extend to its affiliates (such as parent, sister or subsidiary corporations).

**Hourly Charges.** Unless other arrangements are made, our billing for legal services will be on a per hour basis broken down into one-tenth of an hour increments. Our rates are determined based on a number of factors including;

- The years of experience and reputation that the lawyer or legal professional possesses;
- The specialization and training required to develop expertise in the area of practice;
- The complexity of the area of law or legal issues presented;
- The amount of money or value of property involved;
- The risk assumed by the firm in performing certain types of work; and
- The nature of our professional relationship with you.

We are often asked to provide estimates regarding what the cost of our representation on a given matter will equal. We are pleased to provide such estimates when, in our professional judgment, they can be made. Unless we agree in writing to perform a specific project for a fixed fee, an estimate will not represent a maximum, minimum or agreed charge.

**Retainers.** Any requested retainer will be held in trust to secure payment of our legal fees and expenses. Typically, the retainer fee will be held to secure the final invoice and

you will be billed monthly for services. It is understood, however, that Lane & Waterman may withdraw amounts from the retainer at any time as may be necessary to satisfy outstanding invoices. If at any time the retainer proves insufficient to cover past due invoices or falls below the agreed amount, you will be called upon to replenish the retainer amount. Any trust amounts remaining after all legal services have been paid for will be returned to you. Interest paid on Lane & Waterman's trust account is paid over to the Iowa Trust Account Commission and not kept by the firm. Accordingly, you will not earn or be paid interest on the retainer fee balance, unless other arrangements are made with the firm.

**Reimbursement of Expenses.** In addition to per-hour charges, we will expect reimbursement for out-of-pocket expenses such as out-of-town travel, meals, lodging, court costs, long distance charges, overnight delivery charges, copying services, and the actual charges of on-line computer databases for legal research and investigation of matters on your behalf. We do not bill direct or indirect overhead items such as secretarial time, word processing time and the like, nor do we build in a profit factor in connection with out-of-pocket expenses. It is our policy that outside providers of services (such as the fees of outside consultants, expert witnesses, appraisers and court reporters) bill you directly.

**Billing of Services.** Typically, our billing statements will be mailed monthly one to two months after services have been provided. Payment is expected promptly upon receipt of the statement. If you have any questions about a bill, please contact your primary attorney.

**Termination of Representation.** You may terminate our representation at any time, with or without reason, by notifying us in writing. We have the same right and, at our option, may discontinue providing services upon providing you with a written notice. If you fail to pay invoices in a timely manner, we may exercise our right to cease providing further services until outstanding invoices have been paid or alternative arrangements for payment have been made. Your termination of our representation in no way relieves you of the obligation to pay for legal services that have been provided prior to the time of termination and that are necessitated to make an orderly transfer of our file materials.

Upon termination of our representation for any reason, we will return your papers, documents and other property to you upon receipt of your request for them. We may, and likely will, retain a copy of the materials returned to you. If you have outstanding invoices owing to the firm, we may have the right to retain your documents if they are properly subject to a lien.

At such time as we have completed the scope of work for which we have been retained, we will consider our representation to have ended. If you later retain us to perform further or additional work, our future representation will be subject to the terms of and understanding set forth herein, unless other terms and conditions are expressly agreed to.

**Conflicts of Interest.** Conflicts of interest are a concern for Lane & Waterman and the clients we represent. We attempt to identify actual and potential conflicts at the outset of any engagement, and may request that you sign a conflict waiver before we accept an engagement from you. Occasionally, other clients or prospective clients may ask us to seek a conflict waiver from you so that we can accept an engagement on their behalf. Please do not take such a request to mean that we will represent you less zealously; rather, that we take our professional responsibilities to all clients and prospective clients very seriously.

Unfortunately, conflicts sometimes arise or become apparent after work begins on an engagement. When that happens, we will do our best to address and resolve the situation in the manner that best serves the interests of all of our affected clients.

Because we are a large firm, we may be asked to represent someone whose interests may be adverse to yours. We are accepting this engagement on the understanding that our representation of you will not preclude us from accepting any other engagement from any existing or new client provided that (i) such engagement is not substantially related to the subject matter of any services we are providing to you and (ii) in accepting such other engagement we would not impair the confidentiality of proprietary, sensitive or otherwise confidential communications you have made to us.

**E-Mail and Cellular Phone Authorization.** Lane & Waterman is able to communicate with clients via electronic mail over the internet ("e-mail") and many of our attorneys utilize cellular phones. With e-mail, current technology cannot eliminate the risk that confidences and/or secrets otherwise protected by the attorney/client privilege may be viewed by unauthorized third parties and the privilege thereby lost. As to both means of communication, sensitive, confidential and proprietary materials of the client may be intercepted by unauthorized third parties.

It is the policy of Lane & Waterman that prior to communicating with a client or sending information proprietary to the client via e-mail or over a cellular phone that the client specifically authorize such communication after having been advised:

(a)     of the risk of the loss of the attorney/client privilege and that sensitive, confidential or proprietary material may be inadvertently disclosed to unauthorized third parties;

(b)     that Lane & Waterman does not currently utilize encryption technology or other equivalent security systems when sending information over the internet; and

(c)     that the client has the right to specifically direct Lane & Waterman not to send the client sensitive, confidential or proprietary materials via e-mail or to utilize a cellular phone when communicating.

Unless you specifically provide direction to the contrary, your signed acknowledgment of Lane & Waterman's Standard Terms of Engagement will indicate your review of this policy statement on the use of e-mail and cellular phones and will specifically authorize Lane & Waterman to utilize e-mail, to send information over the Internet to communicate with you and with third parties and to utilize cellular phones. By acknowledging the Standard Terms of Representation you agree to assume the risk of inadvertent disclosure and the risk of the loss of attorney/client privilege as it relates to information being transmitted. You retain the right to direct Lane & Waterman not to send specific items of information via the internet, by e-mail or over a cellular phone. This authorization shall remain in effect until revoked in writing.

**Individual Clients - Privacy Rights.** Your privacy is important to us, and maintaining your trust and confidence is one of our highest priorities. We respect your right to keep your personal information confidential and understand your desire to avoid unwanted solicitations. In that regard, attorneys, like other professionals who advise on personal financial matters (e.g. banks, brokerage houses, and other financial institutions), may be required by a new federal law (Gramm-Leach-Bliley Privacy Act) to inform their clients of their policies regarding privacy of client information. We are more than happy to do so.

**Attorneys have been and continue to be bound by professional standards of confidentiality that are <u>even more stringent</u> than those required by this new law. Therefore, we have always protected our clients' right to privacy and will continue to do so.**

In the course of providing our clients with income tax, estate tax, and gift tax advice, we receive significant personal financial information from our clients.  As a client of Lane & Waterman, you should know that all information that we receive from you is held in confidence, and is not released to people outside the firm, except as agreed to by you, or as required under an applicable law.

We retain records relating to professional services that we provide so that we are better able to assist you with your professional needs and, in some cases, to comply with professional guidelines. In order to guard your nonpublic personal information, we maintain physical, electronic and procedural safeguards that comply with our professional standards to guard your personal information from unauthorized access.

Please feel free to contact the attorney at the Firm responsible for the matters you have engaged us to address on your behalf if you have any questions regarding this policy.