IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| IN RE<br>DIOCESE OF DAVENPORT,<br><br>Debtor. | Case No. 06-02229-11<br><br>Chapter 11<br><br>Honorable Lee M. Jackwig |

### DEBTOR'S MOTION UNDER 11 U.S.C. §§ 105, 363, AND 541 FOR AUTHORITY TO HONOR CERTAIN INSURANCE PROGRAMS

The Diocese of Davenport, an Iowa corporation and the debtor and debtor in possession (the "Diocese" or the "Debtor") in the above captioned Chapter 11 reorganization case (the "Reorganization Case"), by and through its attorneys undersigned, respectfully requests that the Court enter an Order under 11 U.S.C. §§ 105, 363 and 541 authorizing the Diocese to continue to honor certain worker's compensation obligations and certain self insurance claims (collectively, the "Claims"). A copy of this Motion has been provided to the Office of the United States Trustee. This Motion presents a "core proceeding" over which the Court has jurisdiction to enter a final order under 28 U.S.C. §§ 157 (A) & (O), and 1334. This Motion is supported and authorized by 11 U.S.C. §§ 105, 363 and 541. This Motion is supported by: (i) the attached Memorandum of Points and Authorities; and (ii) the entire record before the Court in the Reorganization Case.

### I.    BACKGROUND

#### A.    The Diocese of Davenport

The Diocese was established in 1881 and encompasses 22 counties in southeast Iowa. The Diocese serves over 100,000 Roman Catholic parishes.

The Diocese provides ecclesiastical services and pastoral care to the eighty four (84) parishes (collectively, the "Parishes"), eighteen (18) parish-related elementary schools and seven (7) high schools. The offices of the Diocese have thirty-two (32) employees. These offices include, but are not limited to: Office of the Bishop (includes the Vicar General; Directors of

Social Action Liturgy; Faith Formation; Clergy Formation;) Chancellor's Office; Financial Office; and Tribunal.

The Diocese of Davenport has historically been supported by gifts raised from Parishes through an Annual Appeal, and from income generated by investments. As a religious organization, the Diocese has no significant, ongoing for-profit business activities or business income.

### B.    The Sex Abuse Crisis

Over the last fifty years a tragedy that runs contrary to every teaching and tradition of the Roman Catholic Church has unfolded in the Roman Catholic Church as a whole and in the Diocese in particular: a small number clergy took advantage of their positions of trust and respect in the community and sexually abused children.

The Diocese is a defendant in six (6) lawsuits involving sixteen (16) plaintiffs (the "Cases"). The Diocese is mediating seven (7) additional claims of individuals. In addition, the Diocese's Chancellor and/or Victim Assistance Coordinator has been contacted by numerous victims who have not yet filed lawsuits. One of the current cases has now been tried and resulted in a verdict of $1,530,000 against the Diocese on September 25, 2006. Neither the liability of the Diocese (which the Diocese disputes) nor the validity of the remaining claims has been established.

Given the experience of other Dioceses around the country, the Diocese believes that there may well be other claimants who have not yet asserted formal or informal claims arising out of alleged abuse by clergy associated with the Diocese.

### C.    The Reorganization Case

The Diocese does not carry on any unrelated business activity nor does it own any commercial real estate that provides income to the Diocese. Moreover, in light of the law in Iowa regarding sexual abuse and the date upon which a cause of action accrues, incidents that occurred twenty, thirty or more years ago may still be brought against the Diocese, making it difficult for the Diocese to know when all of the potential claims and claimants have finally been identified.

Therefore, in order to deal with the current cases and claimants, with all future claims and claimants which have not yet been asserted against the Diocese, and with all of these victims in a fair, just and equitable manner in light of the limited resources of the Diocese, the Diocese filed the Reorganization Case.

### D. INSURANCE PROGRAM

The Diocese has for a number of years maintained a common property, casualty and liability insurance program to cover claims, losses and casualties involving Diocese real and personal property and property owned by Parishes and Catholic schools located within the Diocese (the "Insurance Program") Under this Insurance Program, the Diocese arranges for liability and casualty insurance under master insurance policies The Parishes, the Parish-related elementary schools and high schools located within the Diocese are all participants in this program. Under the program, each of these entities receives property and casualty insurance covering its real and personal property and covering liability for claims and injuries made against these entities. The Diocese administers the insurance program on the behalf of all of the entities.

Each of the entities participating in the Insurance Program pay a prorated portion of the insurance premiums to the Diocese plus an additional amount to cover clerical and administrative expenses of the Insurance Program. In addition, the Diocese collects and retains additional amounts from the participants in the Insurance Program to act as a reserve to offset deductibles for losses covered by insurance under the Insurance Program.

The Insurance Program is maintained by the Diocese to provide an efficient cost effective way to procure insurance for its facilities and for facilities owned by the Parishes and other Catholic entities within the Diocese. If the Insurance Program is not continued, the Diocese will be forced to purchase individual insurance policies covering its property and liability. These individual insurance policies would be greatly more expensive to the Diocese than the prorated share of the insurance premium paid by the Diocese under the current Insurance Program. In additional, the Diocese would be required to pay the full amount of any deductible for any losses

sustained rather than having access to the deductible fund maintained under the current Insurance Program.

## II. DISCUSSION AND MEMORANDUM OF AUTHROITIES

The Diocese seeks the approval to continue to honor the Insurance Program pursuant to 11 U.S.C. §§ 105(a) and 363(b). Section 363(b)(1) of the Bankruptcy Code provides, in relevant part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). The proposed use, sale, or lease of property of the estate may be approved under section 363(b) if it is supported by the sound business judgment of a debtor's management. *See* Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); In re Del. & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991). Although established in the context of a proposed sale, the "business judgment" standard has been applied in non-sale situations. *See, e.g.,* Institutional Creditors of Cons' Air Lines v. Cont'l Air Lines (In re Cont'l Airlines 780 F.2d 1223, 1226 (5th Cir. 1986) (applying "business judgment" standard in context of proposed "use" of estate property); In re Bethlehem Steel Corp., 2003 U.S. Dist. LEXIS 12909, at *37 - *44 (S.D.N.Y. July 28, 2003) (applying "business judgment" standard in context of proposed reimbursement of employees under a collective bargaining agreement). "The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). Decisions made by a debtor's management in the exercise of its business judgment ordinarily should not be second guessed by a reviewing court. *See* In re Curlew Valley Assoc., 14 B.R. 506, 511 (Bankr. Utah 1981). 11 U.S.C. § 105(a) is the basis for a bankruptcy court's broad exercise of power in the administration of a case under Title 11. To that end, 11 U.S.C. § 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]." Provided that a bankruptcy court does not employ its equitable power to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *See* In re Fesco

Plastics Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to 11 U.S.C. § 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g.,* In re Chinichian, 784 F.2d 1440, 1443 (9th Cir. 1986) (Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust. Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of their creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws"). Granting the Diocese authority to honor the Insurance Program gives the Diocese the ability to preserve significant assets, to continue to carry on a part of its business (providing administrative services and insurance to the Insured Entities) and to minimize the cost of insurance for all insurance claims. Accordingly, granting the motion which allows the Diocese to continue to pay the Insurance Program will preserve assets of the estate and is in the best interests of the estate, its creditors and other parties in interest.

### III.  CONCLUSION

WHEREFORE, the Diocese respectfully requests that the Court enter an Order:

A.   Approving the Motion;

B.   Authorizing the Diocese to continue Insurance Program; and

C.   Granting such other relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

/s/ Richard A. Davidson
Richard A. Davidson
LANE & WATERMAN LLP
220 North Main Street, Suite 600
Davenport, IA 52801
563-333-6624
563-888-7841 Fax
PROPOSED ATTORNEYS FOR DEBTOR,
DIOCESE OF DAVENPORT