IN THE U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| DIOCESE OF DAVENPORT, ) | Case No. 06-02229 |
| an Iowa non-profit corporation, ) | |
| ) | Chapter 11 |
| Debtor and Debtor in Possession. ) | |
| ) | Honorable Lee M. Jackwig |

## MOTION TO EMPLOY REAL ESTATE AGENTS TO MARKET SURPLUS REAL ESTATE LOCATED AT 2761 SCOTT STREET; 803 E. 39TH STREET AND 3718 TELEGRAPHONE ROAD

COMES NOW the Diocese of Davenport ("Debtor") by and through its attorneys Lane & Waterman LLP, and hereby moves for authority from the Court, pursuant to Bankruptcy Code 327(a) to employ real estate agents for the purpose of marketing three parcels of surplus real estate owned by the Diocese, and in support thereof, states as follows:

1. The Debtor commenced this action on October 10, 2006 by the filing of its Petition under Chapter 11 of the Bankruptcy Code.

2. Since the filing of its Chapter 11 Petition, the Debtor has determined that its continued ownership of three (3) parcels of real estate located in Davenport, Iowa, are no longer necessary. The parcels of real estate consist of a duplex located at 2761 Scott Street, a single-family residential house located at 803 E. 39th Street, Davenport, Iowa, and a 25-acre farm located at 3718 Telegraph Road, Davenport, Iowa.

3. The Debtor has owned these parcels of real estate for several years and no longer has any need or use for them, and their continued ownership is a burden on the Debtor and the bankruptcy estate.

4. The Debtor has consulted with real estate agents located in Davenport, Iowa concerning the sale of these properties and proposes to employ Mel Foster Co., Inc. to sell the

39th Street property; Ruhl & Ruhl Realtors, Inc. to sell the Scott Street property; and Ruhl Commercial Company to sell the 25-acre farm. Attached hereto as Exhibit "A" are the proposed listing agreements with the real estate companies. Each company is a licensed real estate brokerage located in Davenport, Iowa. Each company will be paid a commission only upon the sale of the property. The commission to be paid is equal to seven percent (7%), which is a standard real estate sale commission in the Davenport metropolitan area.

5. If any acceptable offers are receive, prior to accepting any such offers, the Debtor will petition the Court for authority to sell the property pursuant to Bankruptcy Code § 363 for authority to pay the real estate agents a commission pursuant to the listing agreements.

6. None of the proposed real estate agents or real estate companies have any connection with the Debtor, Debtor-in-Possession, or the bankruptcy estate. All such agents and companies are disinterested persons.

7. The employment of the real estate agents and companies as proposed herein is necessary to maximize the value of the Debtor's and Debtor-in-Possession's estate and in order to maximize the distribution of assets to the unsecured creditors.

WHEREFORE, the Debtor hereby requests that the Court enter an Order authorizing the employment of the real estate company identified herein for the purpose of listing and marketing the surplus real estate described owned by the Debtor; and for such other and further relief as may be just and equitable in the circumstances.

LANE & WATERMAN LLP


By  /s/ Richard A. Davidson
    Richard A. Davidson
    Lane & Waterman LLP
    220 North Main Street, Suite 600
    Davenport, IA 52801
    563-333-6624
    563-888-7841 Fax

    ATTORNEYS FOR DEBTOR,
    DIOCESE OF DAVENPORT

m:\rdavidson\diocese of davenport\motion employ re agent.doc

Diocese RE



# QUAD CITY AREA REALTOR® ASSOCIATION
## UNIFORM LISTING CONTRACT
*This is a legal binding contract*



In consideration of the mutual agreements herein contained, the undersigned Owner agrees as follows:

**THE OWNER AGREE(S):**

1. That said Broker is granted the sole and exclusive right to sell from the Listing Date __01__ / __15__ / 20__07__ through __07__ / __15__ / 20 __07__, the real estate commonly known as _____2761 Scott St. Davenport_____

for the sum of _____

$(_____) or such price and terms as I (we) may later in writing agree to. Taxes for year in which sale is made, due and payable in succeeding year, to be pro-rated on basis of calendar year as of date of possession or as otherwise agreed.

2. Seller requests that Broker select, prepare, and complete documents allowed by Illinois/Iowa Law or Rule.

3. Owner shall either furnish a merchantable Abstract of Title showing merchantable title of record to the real estate in the Owner and certified to a current date by an abstractor regularly doing business in the county where the premises are located; or, a commitment for Title Insurance issued by a title insurance company regularly doing business in the county where the premises are located, committing the company to issue an owner's policy in the usual form insuring merchantable title to the real estate for the amount of the purchase price. In addition at closing, the Owner shall furnish a general warranty deed or other appropriate deed conveying merchantable title to the Property.

4. THAT THE EARNEST MONEY DOWN PAYMENT SHALL BE DEPOSITED WITH THE LISTING BROKER OR OTHER ESCROWEE IF MUTUALLY AGREEABLE. IN THE EVENT THAT A PURCHASER DEFAULTS IN THE PERFORMANCE OF THE PURCHASE AGREEMENT AND THE EARNEST MONEY IS FORFEITED, THE OWNER AND THE BROKER SHALL EACH RETAIN HALF OF THE FORFEITED SUM, EXCEPT THAT OWNER SHALL RECEIVE ANY SURPLUS IN EXCESS OF THE COMMISSION DUE BROKER. SHOULD SELLER DEFAULT IN PERFORMANCE ON THE PURCHASE AGREEMENT, HE SHALL BE LIABLE FOR BROKER'S COMMISSION, REASONABLE INVESTIGATIVE AND ATTORNEY'S FEE AND OTHER COSTS, IF ANY, INCURRED IN THE COLLECTION OF SUCH BROKER'S COMMISSION.

5. Broker will hold money in a special, non-interest bearing escrow account if an Illinois property or a special interest bearing escrow account if an Iowa property, with the interest being forwarded to the Iowa Association of REALTORS® Foundation, a charitable non-profit entity, or as directed and mutually agreed in writing by both Buyer and Seller. Once the purchase goes to closing, the earnest money will be disbursed according to the terms of the contract to purchase.

6. To give peaceful possession of the property but subject to legal rights of tenants in possession.

7. To pay said Broker a commission of __7__% of the sale price or $_____n/a_____ whichever is greater. The commission shall be payable whether the real estate shall be sold by the Broker, a buyer agent, by the Owner(s), or any other person during the period of this contract or within __0__ days after the expiration thereof, (herein referred to as expiration period) to any person, firm, corporation or agent therof, introduced to this property by the Broker, or Buyer Agent, or Owner, or any person, during the term of this listing contract, provided that in the event of successive listing contracts with any licensed Broker, the undersigned Broker agrees that the latest listing in point of time shall supersede all preceding listing contracts. Said commission shall be paid at closing or within a reasonable time, not to exceed 10 days after closing.

8. In the event a purchase contract is entered into and purchaser defaults without fault on the Owner's part, Broker will waive the commission, and this agreement shall be continued from the date of default through the date provided in paragraph 1. Should Owner(s) default on any contract for the purchase or exchange of the property, any commission owed under this contract shall become payable immediately.

9. That an exchange shall be considered a sale within the meaning of the contract and that the Broker is permitted to represent and receive commission from both parties to the exchange.

10. Owner agrees to immediately refer to Owner's Appointed/Designated Agent all prospective purchasers or brokers who contact Owner for any reason and to provide Owner's Appointed/Designated Agent with their names and addresses.

11. Inspection of property shall be made by appointment.

12. That the listing Broker and Owner's Appointed/Designated Agent may display 'For Sale' signs on, or otherwise advertise, said property.

13. The listing Broker is authorized to place a KeySafe on the property. It is not a requirement of the REALTOR® Association or Broker that a Seller allow use of a KeySafe.

14. The listing Broker is authorized to include the subject property in any electronic advertising service available to the listing broker.

15. Any deviation from the terms of this contract shall be agreed to by the parties in writing. Any corrections or deviations must be initialed in writing by all parties.

16. Owner(s) is (are) required by state law to complete a seller disclosure form concerning the condition of Owner's property and to provide that form to the buyer of Owner's property. Owner understands that Owner will be responsible for completing that form or having it completed by appropriate inspectors or professionals and that the listing broker or Appointed/Designated Agent shall in no way be responsible for completion of the seller disclosure form or the content of the information contained in the seller disclosure form. Upon completion of the form by Owner, listing broker or Appointed/Designated Agent is authorized to deliver the seller disclosure form to prospective

_____/_____ Seller's initial(s) X

Revised 4/06                Page 1 of 2



# QUAD CITY AREA REALTOR® ASSOCIATION
## UNIFORM LISTING CONTRACT
*This is a legal binding contract*

buyers prior to the time that the prospective buyer in question is bound by a contract to purchase.

17. Broker is authorized to show the property to prospective buyers represented by buyer's agents, and Broker, in its sole discretion, may pay a part of the above commission to buyer's agent or other cooperating agents. Broker is authorized in its sole discretion to determine with which brokers it will cooperate, and the amount of compensation that it will offer cooperating brokers in the sale of Owner's property. Owner acknowledges that the compensation offered to such cooperating brokers may vary from Broker to Broker.

18. Owner understands that the information which Owner provides to Owner's Appointed/Designated Agent as listing information will be used to advertise Owner's property to the public, and it is essential that this information be accurate. Owner has reviewed the property description worksheet and represents that the information contained in it is true and accurate to the best of OWNER'S knowledge. Although Owner is listing Owner's property in its present physical condition ("as is" condition), Owner understands that Owner may be held responsible by a buyer for any latent or hidden, undisclosed defects in the property which are known to Owner but which are not disclosed to the Buyer.

19. Owner agrees to save and hold Broker harmless from all claims, disputes, litigation, judgments, and costs (including reasonable attorney's fees) arising from Owner's breach of this agreement, from any incorrect information or misrepresentation supplied by Owner or from any material facts, including latent defects, that are known to Owner that Owner fails to disclose.

20. Seller ____ shall provide ____ waives a Home Warranty on the property at time of listing.

*check one*

THE BROKER AGREES:
1. Broker designates/appoints ____Matt Schwind_____, a sales associate(s) affiliated with Broker as the only legal agent(s) of the Owner. Broker reserves the right to name additional Appointed/Designated Agents when in Broker's discretion it is necessary. If additional Appointed/Designated Agents are named, Owner shall be informed in writing within a reasonable time. Owner acknowledges that Owner's Appointed/Designated Agent may from time to time have another sales associate, who is not an agent of the owner, sit at an open house of Owner's property or provide similar support in the marketing of Owner's property. Seller understands and agrees that this agreement is a contract for Broker to market Owner's property and that Owner's Appointed/Designated Agent(s) is (are) the only legal agent(s) of Owner. Owner's Appointed/Designated Agent will be primarily responsible for the direct marketing and sale of Owner's property.

2. To endeavor diligently to procure a purchaser according to the terms hereof.

3. To furnish at all times any data requested by any member of the Quad City Area REALTOR® Association market area MLS or buyer agents and to assist them in any way to complete a sale of this property.

OWNER(S) AND BROKER AGREE:
THE PARTIES UNDERSTAND AND AGREE THAT IT IS ILLEGAL FOR EITHER OF THE PARTIES TO REFUSE TO DISPLAY OR SELL OWNER'S PROPERTY TO ANY PERSON ON THE BASIS OF RACE, COLOR, RELIGION, SEX, ANCESTRY, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN, AGE, MARITAL STATUS OR MILITARY STATUS. THE PARTIES AGREE TO COMPLY WITH ALL APPLICABLE FEDERAL, STATE, AND ANY APPLICABLE LOCAL FAIR HOUSING LAWS.

The sponsoring broker, through one or more sponsored licensees, must provide at a minimum, the following services; (1) accept delivery of and present to the client offers and counteroffers to buy, sell, or lease the client's property or the property the client seeks to purchase or lease; (2) assist the client in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and counteroffers until a lease or purchase agreement is signed and all contingencies are satisfied or waived; and (3) answer the client's questions relating to the offers, counteroffers, notices, and contingencies.

## OTHER TERMS
None

Owners hereby acknowledge they have read this document, and are in receipt of this agreement and all attachments which may include but not be limited to Lead Based Paint Disclosure, Agency Disclosure and Seller Property Disclosure.

| OWNERS Printed Name | OWNERS Printed Name |
|---|---|
| OWNERS Signature  *Ruhl & Ruhl Realtors* | OWNERS Signature  *Teresa Harris* |
| Firm  *Matt S____* | Broker Manager |
| Designated/Appointed Agent Signature | Date |

Revised 4/06                                                                                                              Page 2 of 2

**mel foster co.** ® *Making It Happen!*

## QUAD CITY AREA REALTOR® ASSOCIATION
## UNIFORM LISTING CONTRACT
*This is a legal binding contract*



REALTOR® EQUAL HOUSING OPPORTUNITY

In consideration of the mutual agreements herein contained, the undersigned Owner agrees as follows:

**THE OWNER AGREE(S):**

1. That said Broker is granted the sole and exclusive right to sell from the Listing Date ____/____/20 **07** through ____/____/20 **07**, the real estate commonly known as **803 E. 39th St. Davenport, Ia 52804**

for the sum of _____

$(_____) or such price and terms as I (we) may later in writing agree to. Taxes for year in which sale is made, due and payable in succeeding year, to be pro-rated on basis of calendar year as of date of possession or as otherwise agreed.

2. Seller requests that Broker select, prepare, and complete documents allowed by Illinois/Iowa Law or Rule.

3. Owner shall either furnish a merchantable Abstract of Title showing merchantable title of record to the real estate in the Owner and certified to a current date by an abstractor regularly doing business in the county where the premises are located; or, a commitment for Title Insurance issued by a title insurance company regularly doing business in the county where the premises are located, committing the company to issue an owner's policy in the usual form insuring merchantable title to the real estate for the amount of the purchase price. In addition at closing, the Owner shall furnish a general warranty deed or other appropriate deed conveying merchantable title to the Property.

4. THAT THE EARNEST MONEY DOWN PAYMENT SHALL BE DEPOSITED WITH THE LISTING BROKER OR OTHER ESCROWEE IF MUTUALLY AGREEABLE. IN THE EVENT THAT A PURCHASER DEFAULTS IN THE PERFORMANCE OF THE PURCHASE AGREEMENT AND THE EARNEST MONEY IS FORFEITED, THE OWNER AND THE BROKER SHALL EACH RETAIN HALF OF THE FORFEITED SUM, EXCEPT THAT OWNER SHALL RECEIVE ANY SURPLUS IN EXCESS OF THE COMMISSION DUE BROKER. SHOULD SELLER DEFAULT IN PERFORMANCE ON THE PURCHASE AGREEMENT, HE SHALL BE LIABLE FOR BROKER'S COMMISSION, REASONABLE INVESTIGATIVE AND ATTORNEY'S FEE AND OTHER COSTS, IF ANY, INCURRED IN THE COLLECTION OF SUCH BROKER'S COMMISSION.

5. Broker will hold money in a special, non-interest bearing escrow account if an Illinois property or a special interest bearing escrow account if Iowa property, the interest on trust account shall be forwarded to the Iowa Association of REALTORS® Foundation, a charitable non-profit entity, or as directed and mutually agreed in writing by both Buyer and Seller. Once the purchase goes to closing, the earnest money will be disbursed according to the terms of the contract to purchase.

6. To give peaceful possession of the property but subject to legal rights of tenants in possession.

7. To pay said Broker a commission of **7** % of the sale price or $ **1,000.00** whichever is greater. The commission shall be payable whether the real estate shall be sold by the Broker, a buyer agent, by the Owner(s), or any other person during the period of this contract or within **90** days after the expiration thereof, (herein) referred to as expiration period) to any person, firm, corporation or agent thereof, introduced to this property by the Broker, or Buyer Agent, or Owner, or any person, during the term of this listing contract, provided that in the event of successive listing contracts with any licensed Broker, the undersigned Broker agrees that the latest listing in point of time shall supersede all preceding listing contracts. Said commission shall be paid at closing or within a reasonable time, not to exceed 10 days after closing.

8. In the event a purchase contract is entered into and purchaser defaults without fault on the Owner's part, Broker will waive the commission, and this agreement shall be continued from the date of default through the date provided in paragraph 1. Should Owner(s) default on any contract for the purchase or exchange of the property, any commission owed under this contract shall become payable immediately.

9. That an exchange shall be considered a sale within the meaning of the contract and that the Broker is permitted to represent and receive commission from both parties to the exchange.

10. Owner agrees to immediately refer to Owner's Appointed/Designated Agent all prospective purchasers or brokers who contact Owner for any reason and to provide Owner's Appointed/Designated Agent with their names and addresses.

11. Inspection of property shall be made by appointment.

12. That the listing Broker and Owner's Appointed/Designated Agent may display 'For Sale' signs on, or otherwise advertise, said property.

13. The listing Broker is authorized to place a KeySafe on the property. It is not a requirement of the REALTOR® Association or Broker that a Seller allow use of a Key-Safe.

14. The listing Broker is authorized to include the subject property in any electronic advertising service available to the listing broker.

15. Any deviation from the terms of this contract shall be agreed to by the parties in writing. Any corrections or deviations must be initialed in writing by all parties.

16. Owner(s) is (are) required by state law to complete a seller disclosure form concerning the condition of Owner(s) property and to provide that form to the buyer of Owner's property. Owner understands that Owner will be responsible for completing that form or having it completed by appropriate inspectors or professionals and that the listing broker or Appointed/Designated Agent shall in no way be responsible for completion of the seller disclosure form or the content of the information contained in the seller disclosure form. Upon completion of the form by Owner, listing broker or Appointed/Designated Agent is authorized to deliver the seller disclosure

_____/_____ Owner's initial(s)

Revised 05/06

Form #42 Page 1 of 2



*Making It Happen!*

## QUAD CITY AREA REALTOR® ASSOCIATION
## UNIFORM LISTING CONTRACT
*This is a legal binding contract*

 

form to prospective buyers prior to the time that the prospective buyer in question is bound by a contract to purchase.

17. Broker is authorized to show the property to prospective buyers represented by buyer's agents, and Broker, in its sole discretion, may pay a part of the above commission to buyer's agent or other cooperating agents. Broker is authorized in its sole discretion to determine with which brokers it will cooperate, and the amount of compensation that it will offer cooperating brokers in the sale of Owner's property. Owner acknowledges that the compensation offered to such cooperating brokers may vary from broker to broker.

18. Owner understands that the information which Owner provides to Owner's Appointed/Designated Agent as listing information will be used to advertise Owner's property to the public, and it is essential that this information be accurate. Owner has reviewed the property description worksheet and represents that the information contained in it is true and accurate to the best of OWNER'S knowledge. Although Owner is listing Owner's property in its present physical condition ("as is" condition), Owner understands that Owner may be held responsible by a buyer for any latent or hidden, undisclosed defects in the property which are known to Owner but which are not disclosed to the Buyer.

19. Owner agrees to save and hold Broker harmless from all claims, disputes, litigation, judgments, and costs (including reasonable attorney's fees) arising from Owner's breach of this agreement, from any incorrect information or misrepresentation supplied by Owner or from any material facts, including latent defects, that are known to Owner that Owner fails to disclose.

20. Seller _____ shall provide _____ waives a Home Warranty on the property at time of listing.

**THE BROKER AGREES:**
1. Broker designates/appoints ___Sophina Dirck___, a sales associate(s) affiliated with Broker as the only legal agent(s) of the Owner. Broker reserves the right to name additional appointed/designated agents when in Broker's discretion it is necessary. If additional appointed/designated agents are named, Owner shall be informed in writing within a reasonable time. Owner acknowledges that Owner's Appointed/Designated Agent may from time to time have another sales associate, who is not an agent of the owner, sit an open house of Owner's property or provide similar support in the marketing of Owner's property. Seller understands and agrees that this agreement is a contract for Broker to market Owner's property and that Owner's Appointed/Designated Agent(s) is (are) the only legal agent(s) of Owner. Owner's Appointed/Designated Agent will be primarily responsible for the direct marketing and sale of Owner's property.
2. To endeavor diligently to procure a purchaser according to the terms hereof.
3. To furnish at all times any data requested by any member of the Quad City Area REALTOR® Association market area MLS or buyer agents and to assist them in any way to complete a sale of this property.

**OWNER(S) AND BROKER AGREE:**
**THE PARTIES UNDERSTAND AND AGREE THAT IT IS ILLEGAL FOR EITHER OF THE PARTIES TO REFUSE TO DISPLAY OR SELL OWNER'S PROPERTY TO ANY PERSON ON THE BASIS OF RACE, COLOR, RELIGION, SEX, ANCESTRY, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN, AGE, MARITAL STATUS OR MILITARY STATUS. THE PARTIES AGREE TO COMPLY WITH ALL APPLICABLE FEDERAL, STATE, AND ANY APPLICABLE LOCAL FAIR HOUSING LAWS.**

The sponsoring broker, through one or more sponsored licensees, must provide at a minimum, the following services; (1) accept delivery of and present to the client offers and counteroffers to buy, sell, or lease the client's property or the property the client seeks to purchase or lease; (2) assist the client in developing, communicating, negotiating, and presenting offers, counteroffers, and notices that relate to the offers and counteroffers until a lease or purchase agreement is signed and all contingencies are satisfied or waived; and (3) answer the client's questions relating to the offers, counteroffers, notices, and contingencies.

**OTHER TERMS**

___Home to be Sold "AS Is"___

**OWNERS hereby acknowledge they have read this document, and are in receipt of this agreement and all attachment(s) which may include but not be limited to Lead Based Paint Disclosure, Agency Disclosure and Seller Property Disclosure.**

OWNERS Printed Name _____

OWNERS Printed Name _____

OWNERS Signature _____

OWNERS Signature _____

Firm ___MEL FOSTER Co.___

Broker Manager _____

Designated/Appointed Signature ___Sophina L. Dirck___

Date _____

Revised 4/05

Form #42 Page 2 of 2

# NAI Ruhl & Ruhl Commercial Company

Commercial Real Estate Services, Worldwide

tel 563 355 4000
fax 563 355 4445
5111 Utica Ridge Road
Davenport IA 52807

tel 515 309 4002
fax 515 309 4040
1701 48th Street Suite 111
West Des Moines IA 50266

www.ruhlcommercial.com
Since 1862

December 22, 2006

Ms. Char Maaske
Diocese Of Davenport
2706 N. Gaines Street
Davenport, IA 52806

**Re: Listing Proposal For 3718 Telegraph Road, Davenport, Iowa**

Dear Ms. Maaske,

Per your request we have provided a pricing recommendation, detailed marketing proposal and proposed listing agreements for your property located at 3718 Telegraph Road, Davenport, Iowa.

The property consists of 25.5 acres of land with a home, barn and outbuilding on the property. The home appears to be in slightly less than average condition and the outbuilding and barn appear to be in poor condition. The highest and best use of the property is as residential development land. The property is currently zoned R-1 a single family residential zoning. The property does have city water service. We are unclear at this time whether the property has City sewer service but we believe a sewer line to be nearby. We will confirm the exact sewer location. For purposes of this proposal our pricing assumes that there is a sewer line to the property or nearby. Per the Phase I environmental study the property appears to have no environmental concerns.

The property location is somewhat difficult based on some of the surrounding properties. Many of the neighboring homes are in poor condition and the property is situated directly across the street from an older trailer park. Still, the proximity to the central business district while offering a relatively rural setting will likely be attractive to some buyers.

We have been unable to locate any comparable sales on Telegraph Road or in Southwest Davenport that relate closely to this property. The best scenario for determining value is to consider the highest and best use (residential development) and extrapolate what a developer would pay for the land based on the improvements required and final sales price a party could achieve. The likely sales price in this scenario is approximately $9,800 to $13,000 per acre. We recommend a listing price of $13,000 per acre considering a developer will likely have to demolish all of the structures on the site.

Marketing time for the property will likely be four (4) to six (6) months based on current market conditions.

NAI Ruhl & Ruhl Commercial Company would charge a fee of seven (7) percent of the final sales price. This fee would be due and payable at the time of property closing. In the

Individual member of

  

event that a sale is not procured no fee would be due. We have proposed a twelve (12) month listing period. Please find a proposed listing agreement reflecting these terms.

Please feel free to call at anytime to discuss this information. If all terms are acceptable please execute all of the agreements and return to my attention. We look forward to working with you on this assignment.

Best Regards,

*[signature]*

John G. Ruhl
NAI Ruhl & Ruhl Commercial Company

**NAI** Ruhl & Ruhl
Commercial Company

## STRATEGIC MARKETING PLAN

NAI Ruhl & Ruhl Commercial Company is pleased to present the following Strategic Marketing Plan outlining the steps and marketing methods we will implement to assure your property located at <u>3718 Telegraph Road Davenport, Iowa</u> receives the best and most effective exposure to the market place. The objective of this Strategic Plan is to efficiently and systematically expose the property to as many logical users as possible in the least amount of time.

NAI Ruhl & Ruhl Commercial Company is a full service Commercial Real Estate firm with 26 full-time Commercial Real Estate practitioners in our offices in the Quad Cities, Des Moines, and Dubuque. A professional support staff to assist in coordinating the market campaign backs our sales associates. As listing agents, <u>John G. Ruhl and Andrew Doyle</u> will accept the responsibility of coordinating the team effort to market the property and will accept responsibility for direct contact with you, the property owner, so that you are well informed and up to date with respect to marketing activities, showings, inquiries and active negotiations.

### TARGET MARKET

Within the first two (2) weeks after completing our Listing Agreement, a specific target market will be created. Considering the highest and best use for the subject property and utilizing sophisticated computer software, the name, address and telephone number of each prospect in a specific target market will be identified. This master list will guide us in our marketing effort and will be the initial launch of the campaign. A well-defined and accurate target market is the key ingredient in effectively contacting the greatest number of logical users for the subject property.

### COOPERATIVE BROKERAGE

In addition to identifying users for the property, a master list of Commercial Real Estate brokers in the market will be utilized for contact to encourage their assistance in marketing the property. We maintain a positive working relationship with commercial real estate professionals associated with other firms. Such a relationship allows us to expose your property to the greater commercial real estate community and equip all brokers with the information necessary to introduce your property to their clients.

### MARKETING TOOLS

I.  <u>SIGNAGE</u>
    A simple yet effective way to market the property to the general public is the use of a professionally prepared 4' X 8' sign, or appropriate size sign, installed in a visible location on the property. The sign will simply advertise the availability of the subject property and offer the listing agent's name and phone number to contact for additional information.

II. <u>COMMERCIAL MULTIPLE LISTING SERVICE</u>
    Detailed information regarding the subject property will be submitted to our regional Commercial Multiple Listing Service, an online inventory of commercial listings, with over 100 Commercial Member Brokers. Commercial real estate practitioners in the Quad City region will have instant access to this system and can search for available

properties to match their client's needs. Information will remain in the Commercial Multiple Listing Service until such time as a transaction is completed or the Listing Agreement expires.

III.   **BROCHURE**

A brochure featuring the subject property will be prepared utilizing digitized photography and printed in high-resolution color. In addition to each brochure, a salient data sheet detailing all relevant information concerning the property will be attached. This marketing tool will be used as a direct mail piece distributed throughout the marketing period to the specific target market identified. In addition to the hard copy, the brochure and data sheet will be filed electronically so that this information can be sent electronically if so requested by the prospect.

IV.   **NAI RUHL & RUHL COMMERCIAL COMPANY WEBSITE**

The subject property will be included in the NAI Ruhl & Ruhl Commercial Company website which is linked to numerous local, national, and international agencies and Internet services. Detailed information such as photos, surveys, salient data and floor plans can be incorporated into this feature. With instant 24-hour access, the subject property is exposed to interested prospects worldwide. Our interactive website allows prospects to narrow their search by entering search criteria such as property type, size, geographic location and price. Our website address is www.ruhlcommercial.com.

**PERSONAL NETWORKING**

The single most effective marketing tool utilized is our personal network of contacts. Such contacts include community-based organizations, Chambers of Commerce, and service clubs, to name a few. While these contacts may not be specific prospects for the subject property, their input and expertise is often the source of creative ideas necessary to successfully market the subject property and complete the transaction.

**LISTING AGREEMENT**

**LISTING PERIOD**

A minimum listing period of twelve (12) months is necessary. Twelve months will provide the time necessary to place the components of this strategic plan into action, establish contact with potential prospects, and maintain follow-up with the prospects that have expressed interest.

**MARKETING PRICE**

Taking into consideration all factors that influence the price of the subject property, including local market conditions (supply and demand, physical and functional obsolescence), we believe the subject property has a market value range of:

| Low | High | Recommended Listing Price |
|---|---|---|
| $9,803.00 per acre | $13,000.00 per acre | $13,000.00 per acre |
| $250,000.00 | $331,500.00 | $331,500.00 |

Strategic Marketing Plan                                3                                              Date

## COMMISSION

We propose a commission equal to 7% of the selling price payable at closing.

With such a commission structure, NAI Ruhl & Ruhl Commercial Company agrees to fund all aforementioned marketing expenses incurred in implementation of this plan and agree to split commissions on a 50/50 basis with any cooperating broker who successfully closes a transaction.

## MARKETING BUDGET

As we progress through the marketing plan, it may become necessary to consider alternative marketing tools such as: Professional and/or aerial photography, advertising in newspapers, advertising in national or regional real estate publications or production of a professional video presentation. In such cases we will establish a cost budget for such alternative marketing methods and with ownership approval we will coordinate implementation. Invoices for these expenses will be provided to the owner for reimbursement to NAI Ruhl & Ruhl Commercial Company. When a successful closing or lease transaction is reached, these expenses will be credited towards the commission paid by the owner to NAI Ruhl & Ruhl Commercial Company.

Throughout the marketing period, we will provide you with our best professional recommendations to keep the subject property competitive and a forerunner in the market place. We pledge to you our personal best efforts to assure you a transaction which reaches a beneficial conclusion for all parties involved. We appreciate your consideration and look forward to working with you on this assignment

Submitted By:

_____                          _____
John G. Ruhl                                                                         Andrew Doyle

**NAI RUHL & RUHL COMMERCIAL COMPANY**




## GREATER DAVENPORT BOARD OF REALTORS
## UNIFORM LISTING CONTRACT

In consideration of the mutual agreements herein contained, the undersigned Owner(s) and Broker agree as follows:

**THE OWNER(S) AGREES:**
1. To, and by this agreement does, give the Broker sole and exclusive right to sell the real estate known as: <u>3718 Telegraph Road Davenport, Iowa 52804</u> for the sum of $ <u>$331,500.00</u> from <u>12/28/2006</u> thru <u>12/01/2007</u> inclusive.

2. Seller shall indemnify and save and hold REALTOR and REALTOR'S agents harmless from all claims, disputes, litigations, judgments and costs arising from any misrepresentations made by Seller, incorrect information supplied by Seller or problems with the property which would tend to decrease the value of the property or any other latent defects in the property which are known to the Seller and Seller fails to disclose.

3. To furnish an abstract showing good and merchantable title.

4. That the earnest money down payment shall be deposited with the Broker pending approval of the Title and execution of the final papers

5. To give possession of said property <u>upon closing</u>

6. To pay said Broker a brokerage fee amounting to <u>7</u>% of the sales price. The Broker may disburse part of the broker's compensation to other brokers, including a buyer's broker solely representing the buyer. Brokerage fee shall be payable to the Broker whether the real estate shall be sold by the Broker, a subagent, buyer's broker, the Owner(s), or any person during the period of this contract or within _ days after the expiration thereof to any person, firm or corporation introduced to this property by any broker, subagent, buyer's broker, or Owner(s), during the term of this listing contract.

7. Upon the expiration of this contract, the signing of a succeeding listing on this property by and between the Owner(s) and any other licensed real estate broker eliminates all claims or rights of the undersigned broker that might otherwise arise out of this contract.

8. That an exchange shall be considered a sale within the meaning of this contract. Broker is permitted to represent and receive brokerage fee from both parties

9. To refer all inquiries to the Broker immediately.

10. To show the property at all reasonable hours by appointment at the request of the Broker

11. The Broker may display a "For Sale" sign on the premises.

12. Owner does permit subject property to be advertised on the Internet Site(s) of the Quad City Commercial Board (MLS) of Commercial Realtors

**THE BROKER AGREES:**
1. To endeavor diligently to procure a purchaser according to the terms hereof.

2. To furnish at all times any data requested by any other member of the Commercial Multiple Listing Service of the Quad City Commercial Board of REALTORS, and to assist them in any way to complete a sale of this property.

3. To furnish all information regarding the BROKER'S AGENCY POLICY

**OWNER(S) AND BROKER AGREE:**
1. That the subject property shall be submitted to the Greater Davenport Board of REALTORS Commercial Multiple Listing Service within five (5) business days following the execution of this agreement, for distribution to all other Broker members

2. That it is illegal to refuse to display to or sell to any person because of race, color, religion, national origin, sex, handicap or familial status

3. That the attached property description worksheet of this subject property is accurate to the best of our knowledge

**OTHER TERMS AND CONDITIONS:** _____

Executed in _____ County this _____ day of _____ 20__, __ A M __ P M.

_____   NAI Ruhl Ruhl Commercial Co
Seller                        By _____ Broker

_____
Seller

**NAI RUHL & RUHL COMMERCIAL COMPANY**
*Commercial Real Estate Services Worldwide*

Since 1862

# IOWA - AGENCY DISCLOSURE NOTICE
## AND CONSENT TO
## APPOINTED AGENCY/DUAL AGENCY
(To be discussed with and signed prior to any specific assistance Lessor or Lessee)

Ruhl & Ruhl Commercial Company is pleased to assist you in connecting with the lease of Iowa real estate. The following will govern the terms of your relationship with <u>John G. Ruhl and Andrew Doyle</u> as its Appointed
("Appointed Agent")
Agent to represent _____ in connection with the possible
("Client's Name")
purchase and/or sale of Iowa real estate. Only the Appointed Agent will represent the client(s) named above (together with any additional Appointed Agent who may be designated by NAI Ruhl & Ruhl Commercial Company hereafter). No other broker or sales associate affiliated with NAI Ruhl & Ruhl Commercial Company will be acting as an agent for the client(s) named above. It is the policy of NAI Ruhl & Ruhl Commercial Company to offer real estate services exclusively through Appointed Agents with respect to Iowa real estate. No other type of agency relationship is available through NAI Ruhl & Ruhl Commercial Company. The Appointed Agent and other NAI Ruhl & Ruhl Commercial Company sales associates may provide services simultaneously to other parties involving the same real estate. When representing the buyer, NAI Ruhl & Ruhl Commercial Company and the Appointed Agent will generally be offered and will accept a commission from the seller or the seller's real estate agent, who may not be a client of NAI Ruhl & Ruhl Commercial Company or the Appointed Agent. It is the policy of NAI Ruhl & Ruhl Commercial Company to reciprocate with other broker's offers to cooperate and compensate. It is also the policy of Ruhl & Ruhl Commercial Company to neither offer subagency to or accept subagency from cooperating brokers.

### DUTIES TO ALL PARTIES

A real estate agent, including the Appointed Agent, has the following duties to all parties to a transaction, regardless of which party the agent represents;

    a      To provide real estate brokerage services to all parties to the transaction honestly and in good faith;
    b      To diligently exercise reasonable skill and care in providing brokerage services to all parties;
    c.     To disclose to each party all material adverse facts that the agent knows, except for the following:
            1     Material adverse facts known by the party
            2     Material adverse facts the party could discover through a reasonably diligent inspection, and which would be discovered by a reasonably prudent person under like or similar circumstances
            3     Material adverse facts the disclosure of which is prohibited by law
            4     Material adverse facts that are known to a person who conducts an inspection on behalf of a party A "material adverse fact" means an adverse fact that a party indicates is of such significance, or that is generally recognized by a real estate agent as being of such significance to a reasonable party, that it affects or would affect a party's decision to enter into a contract or agreement concerning a transaction, or affects or would affect a party's decision about the terms of a contract or agreement.
    d      To account for all property coming into the possession of the agent that belongs to any party within a reasonable time of receiving the property

### DUTIES TO A CLIENT

In addition to the real estate agent's duties to all parties as provided above, a real estate agent, including the Appointed Agent, has the following duties to the agent's client(s):

    a      To place the client's interests ahead of the interests of any other party, unless the agent is acting as a disclosed dual agent, as discussed below;
    b      To disclose to the client all information known by the agent that is material to the transaction and that is not known by the client or could not be discovered by the client through a reasonably diligent inspection;
    c.     To fulfill any obligation that is within the scope of the agency agreement, except those obligations that are inconsistent with other duties that the agent has under the law;
    d      To disclose to the client any financial interests the agent or the brokerage has in any business entity to which the agent or brokerage refers a client for any service or product related to a transaction

DUTIES OF A DISCLOSED DUAL AGENT

An Appointed Agent may legally represent both the Lessor and the Tenant in a transaction, but only with the prior knowledge and the written consent of both parties. This is called "Dual Agency". The Appointed Agent will be acting as a Dual Agent when he or she represents both the owner/seller and the prospective buyer. This means that when the Appointed Agent is the listing agent and the selling agent, the Appointed Agent will be representing both parties simultaneously. When acting as Dual Agent, the agent has the same Duties to All Parties and Duties to A Client, as set forth above, EXCEPT, a Dual Agent may not and does not have a duty to place one client's interests ahead of the interests of the other client. Representing more than one party to a transaction may present a conflict of interest since both clients may rely upon Appointed Agent's advice and Buyer and Seller's respective interests may be adverse to each other. The Appointed Agent will endeavor to be impartial between both parties and will not represent the interest of either party to the exclusion or detriment of the other party. Appointed Agent will act as a dual agent only with the written consent of ALL parties in the transaction. Disclosed Dual Agency requires the following:

a. Agent will not aggressively represent the interest of either Tenant or Lessor to the detriment of the other. Tenant and Lessor shall primarily negotiate on their own behalf, and Appointed Agent shall cease to serve as either Lessor's or Tenant's sole and exclusive agent and shall become a Disclosed Dual Agent for both parties

b. Agent will not disclose to Tenant or Lessor personal confidences posed by the other party which might place that party at a disadvantage

c. In acting as a Disclosed Dual Agent, Iowa law requires Agent to comply with the same duties to all parties as described in Duties sections on reverse side of this contract

d. The following information will not be disclosed by broker or Appointed Agent, acting as a Disclosed Dual Agent without the informed written consent of the client to whom the information pertains that:
   1) Tenant is willing to pay more than the purchase price offered or accept less favorable terms than those indicated on the Tenant's initial offer to purchase; or that
   2) Lessor is willing to accept less than the agreed listing price or material terms other than those specified in the listing agreement; or
   3) What the motivating factors are for any client buying, selling or leasing a property; or
   4) That Lessor will agree to financing terms other than those offered

e. In addition a Disclosed Dual Agent will:
   1) Respond accurately to questions about the property.
   2) Explain real estate terms and procedures
   3) Explain to the Tenant the benefits of having the property inspected
   4) Explain closing costs and procedures
   5) Help the Tenant compare leasing alternatives
   6) Provide information about comparable properties so Lessor and Tenant may make an educated decision on what price to accept or offer
   7) Assist with the standard Letter of Intent form that will include the necessary protection and disclosures for Lessor and Tenant
   8) Work diligently to facilitate the lease within the scope of an agent's expertise and recommend when outside experts should be retained

By signing this agreement the client agrees that the Appointed Agent may act as a Disclosed Dual Agent when the agent represents both the Lessor and the Tenant. Parties are not required to participate in Disclosed Dual Agency.

ACKNOWLEDGMENT AND CONSENT TO APPOINTED AGENCY/DUAL AGENCY

I(We) acknowledge that I(we) have read this document, and that NAI Ruhl & Ruhl Commercial Company and the Appointed Agent have made full disclosure of the client(s) the Appointed Agent represents, the duties of a real estate agent to the parties, and the type of representation the agent will provide. I(We) consent to the Appointed Agency policy and the designation of <u>John G. Ruhl and Andrew Doyle</u> as our Appointed Agent. I(We) have read and understand this statement, have asked questions I(we) have deemed appropriate regarding this disclosure and agreement, and I(we) acknowledge signing and receiving a copy of this document before receiving any specific assistance from the Appointed Agent or making or accepting an offer, which ever is sooner. I(We) have been informed about the possibility of a Dual Agency and consent and agree that the Appointed Agent may act as a Disclosed Dual Agent when he or she represents both the Lessor(s) and the Tenant(s)

IF YOU DO NOT UNDERSTAND ALL THE TERMS OF THIS DOCUMENT, SEEK LEGAL ADVICE BEFORE SIGNING

Dated this _____ day of _____, 2006.

**BROKER:**                              **SELLER:**

NAI RUHL & RUHL COMMERCIAL CO            COMPANY

BY:_____             BY:_____

BY:_____