**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION**

| | | |
|---|---|---|
| In the matter of | ) | Case No. 06-02229-11 |
| | ) | |
| DIOCESE OF DAVENPORT, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable Lee M. Jackwig |

**SECOND AMENDED JOINT PLAN OF REORGANIZATION PROPOSED BY
DEBTOR AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Dated as of April 3, 2008

Davenport, Iowa

**BALLOT DEADLINE: APRIL 23, 2008**

## TABLE OF CONTENTS

ARTICLE 1 INTRODUCTION .................................................................................................1

ARTICLE 2 DEFINITIONS.....................................................................................................1

ARTICLE 3 UNCLASSIFIED CLAIMS ...............................................................................15
    3.1   Administrative Expense Claims..............................................................15
    3.2   Priority Tax Claims..................................................................................15
    3.3   Elimination of Claim...............................................................................15

ARTICLE 4 CLASSIFICATION OF CLAIMS .....................................................................15
    4.1   Classification...........................................................................................15
    4.2   Classes.....................................................................................................16

ARTICLE 5 TREATMENT OF CLASS 1 CLAIMS (PRIORITY EMPLOYEE
UNSECURED CLAIMS) ......................................................................................................16
    5.1   Distribution .............................................................................................16
    5.2   Impairment..............................................................................................16

ARTICLE 6 TREATMENT OF CLASS 2 CLAIMS (PRIORITY UNSECURED LAIMS) ..............16
    6.1   Distribution .............................................................................................16
    6.2   Impairment..............................................................................................16

ARTICLE 7 TREATMENT OF CLASS 3 CLAIMS (SECURED CLAIMS)...........................16
    7.1   Distribution .............................................................................................16
    7.2   Impairment..............................................................................................17

ARTICLE 8 TREATMENT OF CLASS 4 CLAIMS (GENERAL UNSECURED
CONVENIENCE CLAIMS)..................................................................................................17
    8.1   Distribution .............................................................................................17
    8.2   Impairment..............................................................................................17

ARTICLE 9 TREATMENT OF CLASS 5 CLAIMS (GENERAL UNSECURED
CLAIMS) .............................................................................................................................17
    9.1   Distribution .............................................................................................17
    9.2   Prepayment .............................................................................................18
    9.3   Impairment..............................................................................................18

ARTICLE 10 TREATMENT OF CLASS 6 CLAIMS (OTHER TORT AND
EMPLOYEE CLAIMS).........................................................................................................18
    10.1  Distribution .............................................................................................18
    10.2  Impairment..............................................................................................18

ARTICLE 11 TREATMENT OF CLASS 7 CLAIMS (TORT CLAIMS) .....................18
    11.1    Election of Treatment of Class 7 Claims ..........................18
    11.2    Allocation of Estate Fund and Release Fund .....................22
    11.3    Convenience Process ...............................................24
    11.4    Matrix Process .....................................................25
    11.5    Litigation Process..................................................26
    11.6    Unknown Tort Claims Process ...................................26
    11.7    Effect of Disallowance.............................................28
    11.8    Succession to Debtor's Rights and Defenses .....................29
    11.9    Questionnaire and Evidence of Abuse ...........................30
    11.10  Determinations by Special Arbitrator and Requests for
            Reconsideration...................................................30
    11.11  All Information about Tort Claimants Confidential .............31
    11.12  Discretion to Defer or Accelerate Payments......................31
    11.13  Counseling ........................................................32
    11.14  Non Monetary Undertakings of the Debtor ......................32
    11.15  Application on Non-Debtors.......................................32
    11.16  Impairment ........................................................33

ARTICLE 12 SETTLEMENT TRUST AGREEMENT; SELECTION OF
SETTLEMENT TRUSTEE AND SPECIAL ARBITRATOR .....................33
    12.1    Settlement Trust Agreement ......................................33
    12.2    Selection Of Settlement Trustee and Special Arbitrator...........33
    12.3    Tax Matters .......................................................33

ARTICLE 13 MEANS OF IMPLEMENTATION OF THE PLAN .....................33
    13.1    Debtor's Transfers to Settlement Trust ..........................33
    13.2    Revesting of Debtor's Property ...................................34
    13.3    Insurance Settlements .............................................34
    13.4    Disposition of Unknown Tort Claims Fund.......................35
    13.5    Retention of Rights ...............................................35
    13.6    Catholic Entities Settlement.......................................35
    13.7    Insurance Neutrality Provisions...................................36
    13.8    Operative Documents.............................................39
    13.9    Compromise of Controversies ....................................40
    13.10  Exemption from Transfer Taxes ..................................40
    13.11  Return of Deposits ...............................................41
    13.12  Chancery Property ................................................41
    13.13  Avoidance Actions ................................................42

ARTICLE 14 DISTRIBUTIONS .....................42
    14.1    Distributions on Business Days ...................................42
    14.2    Interest on Claims ................................................42
    14.3    Delivery of Distributions; Unclaimed Distributions................42
    14.4    De Minimis Payments.............................................43

ARTICLE 15 TREATMENT OF EXECUTORY CONTRACTS  ...............................................43
    15.1    Motion to Assume and Reject............................................43
    15.2    Rejection Claims .....................................................................44

ARTICLE 16 SATISFACTION AND CANCELLATION OF INDEBTEDNESS.................44

ARTICLE 17 CONDITIONS TO EFFECTIVE DATE  .................................................44
    17.1    Debtor's Conditions to Occurrence of Effective Date .................44
    17.2    Deadline for Satisfaction of Conditions; Effect of Failure to Satisfy
           Conditions.......................................................................45

ARTICLE 18 EFFECTS OF CONFIRMATION  ...........................................................45
    18.1    Discharge .................................................................................45
    18.2    Channeled Claims ...................................................................45
    18.3    Exculpation and Limitation of Liability ..................................46
    18.4    Permanent Injunction Against Prosecution of Channeled Claims..............47
    18.5    Settling Insurer Injunction ....................................................48
    18.6    Insurer Contribution Claim Reduction....................................49
    18.7    Term of Injunctions or Stays and Confirmation of Insurance
           Settlements.......................................................................49
    18.8    No Release of Perpetrators.....................................................49

ARTICLE 19 MODIFICATION OF PLAN.......................................................................49

ARTICLE 20 PROCEDURES FOR RESOLVING DISPUTED CLAIMS  ...................50
    20.1    Objections to Claims Other Than Tort Claims .........................50
    20.2    Disputed Distribution.............................................................50
    20.3    Ex Parte Approval..................................................................50

ARTICLE 21 RETENTION OF JURISDICTION .........................................................51

ARTICLE 22 REORGANIZATION OF DEBTOR .........................................................52
    22.1    Continued Corporate Existence ..............................................52
    22.2    Management of Reorganized Debtor .......................................53

ARTICLE 23 GENERAL PROVISIONS  ......................................................................53
    23.1    Administrative Expense Claims Bar Date ...............................53
    23.2    Pre-Effective Date Professional Fees and Administrative Expense
           Claims .............................................................................53
    23.3    Post Effective Date Professional Fees .....................................54
    23.4    Substantial Consummation .....................................................54
    23.5    Payments and Reports to U.S. Trustee....................................54
    23.6    Stay of Confirmation Order Shall Not Apply ..........................55
    23.7    Governing Law .......................................................................55
    23.8    Extension Of Payment Dates ..................................................55
    23.9    Notices ....................................................................................55

| 23.10 | Closing of the Case | 55 |
| 23.11 | Interest | 56 |
| 23.12 | Additional Assurances | 56 |
| 23.13 | Cramdown | 56 |
| 23.14 | Fractional Dollars | 56 |
| 23.15 | Dissolution of Committees and termination of Unknown Tort Claims Representative | 56 |
| 23.16 | Headings | 56 |
| 23.17 | Successors and Assigns | 56 |

ARTICLE 24 NON-MONETARY UNDERTAKINGS OF DEBTOR ......................................56

ARTICLE 25 REQUEST FOR CONFIRMATION ......................................60

## ARTICLE 1
## INTRODUCTION

1.1     The Diocese of Davenport, an Iowa non-profit corporation ("Debtor" or "Diocese"), the Debtor in the above-captioned Chapter 11 reorganization case (the "Reorganization Case") and the Official Committee of Unsecured Creditors ("Committee") jointly propose the following Second Amended Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code. Capitalized terms in this Plan which are not defined in Article 2 are defined in §§101 and 1101 of the Bankruptcy Code and Bankruptcy Rule 9001.

1.2     ALL CREDITORS ARE ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT (AS DEFINED BELOW) BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. AMONG OTHER INFORMATION, THE DISCLOSURE STATEMENT CONTAINS DISCUSSIONS OF THE DEBTOR, THE HISTORICAL BACKGROUND OF THE REORGANIZATION CASE AND THE PREPETITION PERIOD, THE PROJECTIONS GERMANE TO THE PLAN AND THE POST-CONFIRMATION OPERATIONS OF THE DEBTOR AND THE REORGANIZED DEBTOR, AND A SUMMARY AND ANALYSIS OF THE PLAN. NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT OR BY THE BANKRUPTCY CODE FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

1.3     The Court has scheduled the Confirmation Hearing for approval of the Plan on April 30, 2008.

## ARTICLE 2
## DEFINITIONS

2.1     Scope of Definitions. For purposes of the Plan, and except as expressly provided otherwise herein or unless the context otherwise requires, all of the defined terms stated in Article 2 will have the meanings hereinafter stated. The defined terms stated in Article 2 also are substantive terms of the Plan, and Article 2 will be deemed incorporated throughout the rest

1

of the Plan to convey the substantive provisions included in the defined terms. Any term used in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules will have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rule 9001. Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan, as the same may be amended, waived, or modified from time to time. The headings and captions of the Plan (including the headings of the defined terms) are for convenience of reference only and will not limit or otherwise affect the provisions hereof. Accordingly, the defined terms are as follows:

2.2     <u>Abuse</u> means any and all acts or omissions that in any way arise out of, are based upon, or involve actual or alleged sexual conduct or misconduct, sexual abuse or molestation, indecent assault and/or battery, rape, lascivious behavior, undue familiarity, pedophilia, ephebophilia, or sexually-related physical, psychological or emotional harm, or contacts or interactions of a sexual nature between a child and an adult, or a nonconsenting adult and another adult, by a Person for whom the Debtor or any Catholic Entity is or was legally responsible, or who the Debtor or any Catholic Entities failed to control, direct, train or supervise, or about whose acts and propensities the Diocese or any Catholic Entity failed to warn, disclose or provide information. A child or nonconsenting adult is abused whether or not this activity involves explicit force, whether or not it involves genital or other physical contact and whether or not there is physical, psychological or emotional harm to the child or nonconsenting adult. This definition shall not constitute a waiver of any statute of limitations or any other defense that would otherwise be available to the Debtor, the Reorganized Debtor, any Catholic Entity, or the Settlement Trustee under applicable law.

2.3     <u>Abused</u> means being subjected to Abuse.

2.4     <u>Administrative Expense Claim</u> means: (a) a Claim described in §503(b) of the Bankruptcy Code; (b) any actual and necessary postpetition expenses of operating the Diocese; and (c) all Professional Fees approved by the Bankruptcy Court pursuant to interim and final allowances in accordance with Bankruptcy Code §§ 330 and 331.

2.5    <u>Allowed Claim</u> means (i) any Claim which has been listed by the Debtor in its Schedules, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed; (ii) any Claim which is not a Disputed Claim; (iii) any Ordinary Course Administrative Expense Claim which is not a Disputed Claim; (iv) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtor or the Reorganized Debtor pursuant to a Final Order of the Bankruptcy Court or pursuant to the authority granted to the Settlement Trustee or the Special Arbitrator; and (v) any Claim which, if a Disputed Claim, has been allowed by a Final Order; provided, however, that any Claim allowed solely for the purpose of voting to accept or reject the Plan shall not be considered an Allowed Claim hereunder. Any party in interest shall have the same right to object to the Debtor's schedules or an amendment of Debtor's schedules as to a proof of claim, and any Claim covered by such amendment as to which an objection has been filed shall not become an Allowed Claim until allowed by a Final Order. A reference to a specific class of Claims in conjunction with the word "Allowed" (e.g., Allowed General Unsecured Claim) incorporates this definition of Allowed Claims. With respect to a Non-Debtor the terms "Allowed" and "Allowed Claim" shall not apply and, to the extent the Plan refers to such Tort Claims as "Allowed" or refers to "Allowance," the words "Resolve for Payment" and "Resolution for Payment" shall be deemed as substituted therefor.

2.6    <u>Avoidance Actions</u> means any action pursuant to §§544, 545, and 547-550 of the Bankruptcy Code regarding transfers set forth on Schedule 2.6, except transfers to: (a) professionals employed by the Debtor at any time; (b) non-Debtor parties to Executory Contracts assumed by the Debtor pursuant to Bankruptcy Code § 365; (c) to any Catholic Entities listed on Schedule 2.14; (d) or any other internal fund maintained by the Diocese listed on Schedule 2.14.

2.7    <u>Ballot</u> means the ballot approved by the Bankruptcy Court to accompany the Plan and Disclosure Statement which shall be sent to all Creditors entitled to vote on the Plan.

2.8     Bankruptcy Code means Title 11 of the United States Code, 11 U.S.C. §§101, et seq., as amended.

2.9     Bankruptcy Court or Court means the United States Bankruptcy Court for the Southern District of Iowa, Davenport Division or such other court which exercises jurisdiction over part or all of the Reorganization Case, to the extent that the reference of part or all of the Reorganization Case is withdrawn.

2.10     Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075, as amended.

2.11     Bar Date means the date established by the Court's Order Fixing Time for Filing Proofs of Claim or Interest which set July 16, 2007 as the date by which a proof of claim must be filed.

2.12     Business Day means any day, other than a Saturday, Sunday or a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

2.13     Cash means United States currency or other immediately available funds denominated in United States currency.

2.14     Catholic Entities or a Catholic Entity means all (i) parishes, missions, churches, cemeteries, schools and other catholic organizations or entities existing at any time prior to the Effective Date that either: (a) located within the territorial limits of the Diocese; or (b) directly or indirectly under or subject to the supervision or control of the Bishop or the Diocese, including, but not limited to, those entities listed in Schedule 2.14; and (ii) Orders.

2.15     Chancery means the real property described as follows:

The West Half of the Northeast Quarter of the Northwest Quarter of Section 23, Township 78 North, Range 3 East of the 5th P.M. in the City of Davenport, Scott County, Iowa, except that portion thereof condemned for street purposes by City of Davenport, Iowa, by Condemnation proceedings recorded in Book 109 of Town Lot Deeds at page 471, records of the office of the Recorder of Scott County, Iowa; and

The Northwest Quarter of the Southeast Quarter of the Northwest Quarter of Section 23, Township 78 North, Range 3 East of the 5th P.M., in the City of Davenport, Scott County, Iowa, containing approximately 30 acres, more or less; and

The South Half of the Southeast Quarter of the Northwest Quarter of Section 23, Township 78 North, Range 3 East of the 5th P.M. in the City of Davenport, Scott County, Iowa; and

The Northeast Quarter of the Southeast Quarter of the Northwest Quarter of Section 23, Township 78 North, Range 3 East of the 5th P.M. in the City of Davenport, Scott County, Iowa, containing approximately 29 acres, more or less,

2.16    Channeled Claims means all Tort Claims including, without limitation, Unknown Tort Claims, against the Diocese, any Catholic Entities, and Settling Insurers which are channeled, treated and administered pursuant to the provisions and protocols of the Plan and Settlement Trust.

2.17    Channeling Injunction means the injunction under Section 18.4.

2.18    Claim Payment Date means 30 days after the later of the Effective Date or the date on which a Claim, other than a Tort Claim, becomes an Allowed Claim or at such later date if payment is not yet due and the Claim is assumed by the Reorganized Debtor.

2.19    Class means each of the classifications of Claims described in the Plan.

2.20    Committee means the Official Committee of Unsecured Creditors appointed by the United States Trustee pursuant to Bankruptcy Code §1102.

2.21    Confirmation Date means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

2.22    Confirmation Documents means the confirmed Plan, the Confirmation Order, approved Disclosure Statement, any finding of fact and/or conclusion of law entered by the Court with respect to the confirmation of the Plan, or any order or opinion entered on appeal from the Confirmation Order.

2.23    Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code §1129.

2.24    <u>Contribution Actions</u> means any claims, causes of action or rights of any kind or nature of the Diocese or any Catholic Entity for indemnification, contribution or subrogation against any Person who is or may liable to the Diocese and/or any Catholic Entity by reason of any Tort Claim, the settlements provided herein, or any previous settlement of any claims, which are or may have been asserted against the Diocese and/or any Catholic Entity at any time.

2.25    <u>Convenience Fund</u> is defined in Section 11.2.1.

2.26    <u>Convenience Process</u> is defined in Section 11.3.

2.27    <u>Convenience Tort Claim</u> is defined in Section 11.1.1.1.

2.28    <u>Debtor or Diocese</u> (which are completely synonymous and interchangeable) means the Diocese of Davenport, in all of its capacities including, but not limited to, the Diocese as the representative of the Estate.

2.29    <u>Diocese Insurance Policies</u> means any Insurance Policy purchased and owned by the Diocese at any time prior to the Petition Date.

2.30    <u>Disallowed</u> means, with respect to a Claim, such Claim or any portion thereof which has been disallowed by a Final Order or by the Special Arbitrator.

2.31    <u>Disclosure Statement</u> means the disclosure statement approved by the Court for submission to Creditors with this Plan.

2.32    <u>Disputed Claim</u> means every Claim, or portion thereof, which is not an Allowed Claim, to which a timely objection has been filed and which has not yet been Allowed or Disallowed.

2.33    <u>Effective Date</u> means the first Business Day on which the conditions specified in Article 17 of the Plan have been satisfied or waived.

2.34    <u>Enjoined Claim</u> means any Claim relating to any Insurance Policies issued by a Settling Insurer, including without limitation any Claim by or on behalf of a Tort Claimant, any Claim by or on behalf of an insured or putative insured, as well as any Claim for contribution, indemnity, subrogation, equitable subrogation, recoupment, quantum meruit, "other insurance clauses" rights, or similar Claim or legal theory, against any Settling Insurer Parties,

whenever and wherever arising or asserted, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty, including without limitation all Claims by way of direct action, statutory or regulatory action, or otherwise, Claims for exemplary or punitive damages, for attorneys' fees and other expenses, or for any equitable remedy; provided that an Enjoined Claim does not include any Insurance Company Defenses against Persons or Entities other than Settling Insurers; and provided further that any Insurance Company's rights of Insurer Contribution Claims are and shall be preserved as set forth in Section 18.6 of the Plan.

2.35    Estate means the bankruptcy estate of the Diocese created under Bankruptcy Code § 541.

2.36    Estate Fund is defined in Section 13.1.2 and 13.1.3.

2.37    Executory Contract means every unexpired lease and other contract which is subject to being assumed or rejected by the Debtor under Bankruptcy Code §365, pursuant to the Plan or separate motion.

2.38    Final Order means an (i) order or judgment of a court of competent jurisdiction as to which the time for appeal has expired without a notice of appeal having been filed or, if a notice of appeal has been filed, as to which such appeal has been finally resolved, determined or dismissed, or (ii) a final determination by the Special Arbitrator.

2.39    Finally Determined means, with respect to a Claim, and subject to Section 2.5, a Claim which has been Allowed or Disallowed by a Final Order or pursuant to this Plan; and, with respect to a Litigation Tort Claim, a Non Releasing Litigation Tort Claim or a Unknown Tort Claim the holder of which has elected to proceed under the Unknown Tort Claim Litigation Process, a Claim which has been settled by agreement between the holder of such Claim and the Settlement Trustee.

2.40    Funding Proportion is defined in Section 11.2.

2.41    General Unsecured Claim means an Unsecured Claim against the Diocese (including, but not limited to, every such Claim arising from the rejection of an Executory Contract and every Claim which is the undersecured portion of any Secured Claim), which is not

7

an Administrative Claim, or an Employee Priority Unsecured Claim, or a Priority Unsecured Claim, or Tort Claim or Other Tort and Employee Claim.

2.42    General Unsecured Convenience Claim means a General Unsecured Claim in an amount of $500 or less, and a General Unsecured Claim of more than $500 as to which the holder of such Claim irrevocably elects on such holder's Ballot to reduce the amount of such Claim to $500.

2.43    Insurance Claims means all claims, demands, causes of action and rights of any kind or nature of the Debtor or any Catholic Entities or a Tort Claimant against any Insurance Company under laws of any jurisdiction, arising at any time, whether arising by contract or otherwise, including, but not limited to, those arising from or in any way related to: (a) indemnity, contribution or payment of any part of any Tort Claims; (b) any Insurance Company's failure or alleged failure to perform its obligations under applicable law and/or any Insurance Policy as to any Tort Claim; (c) the refusal or alleged refusal of any Insurance Company to defend, compromise and/or settle any Tort Claim insured under any Insurance Policy; (d) any Insurance Company's failure to act in good faith; or (e) the interpretation or enforcement of the terms of any Insurance Policy.

2.44    Insurance Company means any insurance company or insurance broker that during any period of time prior to the Effective Date that (i) provided or allegedly provided, directly or indirectly, any type of insurance coverage to or for the benefit of the Diocese or any Catholic Entities for Abuse; or (ii) issued or allegedly issued an Insurance Policy to the Diocese or any Catholic Entities covering or allegedly covering Abuse.

2.45    Insurance Company Defenses means any and all rights, titles, privileges, claims, demands or entitlements at law or in equity (including rights of setoff or recoupment and rights to obtain a declaration of rights or other affirmative relief) that any Insurance Company may have to dispute, challenge or otherwise contest any (i) Contribution Action or Insurance Claim, including any such Claim that may be brought by a Tort Claimant "direct action"; (ii) actual or potential litigation as to any Insurance Recoveries or any Insurance Policy and/or rights thereunder, including but not limited to any allegations seeking to provide coverage for Tort

8

Claims or expenses of the Settlement Trust. Insurance Company Defenses include, without limitation: (i) any defense or assertion that the assignment of a Non-Debtor's rights relating to Insurance Policies, Insurance Claims and/or Contribution Actions pursuant to the Plan or otherwise is invalid or unenforceable or otherwise breaches the terms of such coverage; and (ii) any defense or assertion that the drafting, proposing, confirmation or consummation of the Plan, the discharge, injunction in favor of and/or release of the Debtor or any Non-Debtors from liability for Tort Claims pursuant to the Plan, or any other matter relating to the Plan, operates to or otherwise results in the elimination of or the reduction of any obligation such Insurance Company may have.

2.46    Insurance Policy means any contract of insurance in effect on or before the Effective Date issued or allegedly issued by an Insurance Company to the Diocese or any Catholic Entities.

2.47    Insurance Recoveries means the rights of the Debtor or any of the Catholic Entities or any Tort Claimant to any and all payments or proceeds of: (a) any award, judgment, relief, or other determination entered or made as to any Insurance Claims; (b) any insurance coverage provided under any Insurance Policy; and (c) any other sums payable by an Insurance Company.

2.48    Insurance Settlements is defined in Section 13.3.

2.49    Insurer Contribution Claims means any rights or Claim by any Insurance Company (including but not limited to Claims against a Settling Insurer) based on contribution, indemnity, reimbursement, subrogation, equitable subrogation, recoupment, quantum meruit, "other insurance clauses" rights, or any similar Claim or legal theories (including attorneys fees and costs) relating to or arising out of, directly or indirectly, the Insurance Policies.

2.50    Iowa District Court means the Iowa District Court in Scott County, Iowa.

2.51    Litigation Fund is defined in Section 11.2.3.

2.52    Litigation Process is defined in Section 11.5.

2.53    Litigation Tort Claim is defined in Section 11.1.1.1.

2.54    Matrix Protocol means the Matrix Protocol for Compensation of Abuse Claims attached as Schedule 2.54.

2.55    Matrix Fund is defined in Section 11.2.3.

2.56    Matrix Process is defined in Section 11.4.

2.57    Matrix Tort Claim is defined in Section 11.1.1.1.

2.58    Non-Debtor means any Entity (including Sacred Heart Cathedral) or any Person other than the Diocese.

2.59    Non-Releasing Litigation Fund is defined in Section 11.2.3.

2.60    Non-Releasing Litigation Tort Claim is defined in Section 11.1.1.1.

2.61    Non-Settling Insurer means an Insurance Company that is not a Settling Insurer.

2.62    Order shall mean a Catholic religious order that is legally responsible for the actions of a Perpetrator who was located or working within the territorial limits of the Diocese and having other legal nexus to the Diocese or other Catholic Entity (other than a Catholic religious order) when the Abuse occurred, and, as to any such order, the releases provided under Article 18 shall only apply to the legal liability arising from such Perpetrator's actions while located or working within the territorial limits of the Diocese when the Abuse occurred and having other legal nexus to the Diocese or other Catholic Entity (other than a Catholic religious order) when the Abuse occurred.  It is not the intent of this Plan to release the legal liability of any Catholic religious order arising from any actions of a Perpetrator who was not located or working within the territorial limits of the Diocese when the Abuse occurred and did not have a legal nexus with the Diocese or other Catholic Entity (other than a Catholic religious order) when the Abuse occurred.

2.63    Ordinary Course Administrative Expense Claim means any Claim described in Bankruptcy Code §503(b) incurred by Debtor in the ordinary course of the operation of the Diocese since the Petition Date but excluding, without limitation, unpaid costs and expenses of the Reorganization Case and Professional Fees.

2.64    Other Tort and Employee Claims means any and all Claims, demands, suits, causes of action, proceedings or any other rights or asserted right to payment heretofore, now or hereafter asserted against the Debtor, whether or not reduced to judgment, based upon or in any manner arising from acts or failure to act by the Debtor which has allegedly resulted in a personal injury asserted against the Diocese, including all workers compensation claims, but excluding all Tort Claims.

2.65    Permanent Injunction is defined in Section 18.4.

2.66    Perpetrator means a Person who committed or is alleged to have committed an act of Abuse upon a Tort Claimant.

2.67    Petition Date means October 10, 2006, which is the date the Debtor filed a voluntary Chapter 11 petition for relief commencing the Reorganization Case.

2.68    Plan means this Second Amended Plan of Reorganization and all exhibits to the Plan, and every restatement, amendment, or modification thereof, if any., and includes the Matrix Protocol and the Settlement Trust Agreement.

2.69    Post-Petition Abuse Claim means a Claim for Abuse that occurred after the Petition Date and before the Effective Date.

2.70    Priority Employee Unsecured Claim means every Unsecured Claim of an employee of the Debtor for wages, salaries, or commissions, including vacation, severance or sick leave pay, which is entitled to priority pursuant to Bankruptcy Code §507(a)(4) and (5).

2.71    Priority Tax Claim means every Unsecured Claim or portion thereof which is entitled to priority pursuant to Bankruptcy Code §507(a) (8).

2.72    Priority Unsecured Claim means any Unsecured Claim or portion thereof which is not an Administrative Claim or a Priority Employee Unsecured Claim and which is entitled to priority under any applicable provision of Bankruptcy Code § 507.

2.73    Professional Fees means fees, costs and expenses of a Professional Person.

2.74   Professional Person means a person employed pursuant to §§327, 328, or 1103 of the Bankruptcy Code and Bankruptcy Rule 2014, including the Unknown Tort Claims Representative.

2.75   Qualified Counsel means an attorney representing a Person asserting an Allowed Matrix Tort Claim who has entered into an enforceable written retainer or fee agreement with such holder on or before the Effective Date and has provided the Settlement Trustee with a copy of the agreement and a declaration under penalty of perjury that no fees or costs are to be repaid to the client or any insider or affiliate of the client; provided that such attorney agrees that the attorney's receipt of Qualified Counsel Fees is credited against the fees owed by the Allowed Matrix Tort Claimant.

2.76   Questionnaire means a questionnaire in the form agreed to by the Committee, the Settlement Trustee and the Special Arbitrator.

2.77   Release Fund is defined in Section 13.1.3.

2.78   Release of Claims is defined in Section 11.1.1.

2.79   Reorganization Case means this case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on October 10, 2006.

2.80   Reorganized Debtor means the Debtor, from and after the Effective Date.

2.81   Secured Claim means every Claim, the repayment of which is secured by the assets of the Debtor to the extent of the lesser of the value of such security or the amount of the Claim, including any right to setoff asserted by a Creditor, that is treated as a Secured Claim under the Bankruptcy Code.

2.82   Secured Creditor means every Creditor which holds a Secured Claim.

2.83   Settlement Agreement means any agreement providing for an Insurance Settlement with a Settling Insurer, including, without limitation, the Settlement, Release, Covenant Not to Execute and Policy Buyback Agreement by and among the Diocese, the Catholic Entities, the Committee, the Unknown Claim Representative and Travelers.

2.84    Settlement Trust means the trust that will be created under the Settlement Trust Agreement pursuant to Iowa law and the Plan.

2.85    Settlement Trust Agreement means the Settlement Trust Agreement in form and substance acceptable to the Debtor and the Committee and approved by the Bankruptcy Court in the Confirmation Order.

2.86    Settlement Trust Costs and Expenses is defined in Section 11.2.

2.87    Settlement Trustee means the trustee provided for in the Settlement Trust Agreement.

2.88    Settlement Trust Reserve is defined in Section 11.2.

2.89    Settling Insurer means an Insurance Company that has entered or later enters into, a Settlement Agreement with the Diocese that is approved by the Bankruptcy Court pursuant to which the Settling Insurer has (i) provided consideration to the Diocese, Catholic Entity, Reorganized Debtor or Settlement Trust in exchange for a release of any liability or obligation to make payments or provide insurance coverage for any Claim; and/or (ii) to purchase its Insurance Policies from the Debtor, Reorganized Debtor and/or Catholic Entities pursuant to section 363 of the Bankruptcy Code.

2.90    Settling Insurer Parties is defined in Section 18.5.

2.91    Settling Parties is defined in Section 18.2.

2.92    Special Arbitrator means Richard M. Calkins, who has been selected by the Committee and the Unknown Tort Claims Representative to serve, evaluate, liquidate and Allow or Disallow the Matrix Tort Claims as set forth in the Plan and the Matrix Protocol.

2.93    Tort Claim means any Claim related to or arising out of any Abuse and shall include any and all Unknown Tort Claims, but excludes any Post-Petition Abuse Claims.

2.94    Tort Claimant means a Person who asserts a Tort Claim, including any Unknown Tort Claimants.

2.95    Travelers means The Travelers Indemnity Company, Inc., Aetna Casualty and Surety Company, United States Fidelity and Guaranty Company, St. Paul Fire and Marine

Insurance Company, St. Paul Mercury Indemnity Company, and each of their past, present, and future parent corporations, subsidiaries, affiliates, divisions, merged or acquired companies or operations and their respective predecessors, successors, and assigns.

2.96    Trust Property is defined in Section 13.1.1.

2.97    Unknown Tort Claims Representative means Michael Murphy, the representative appointed by the Court by order entered November 7, 2007.

2.98    Unknown Tort Claimant means a Person who was Abused but did not file a Proof of Claim by the Bar Date and:

      1.    Was under the age of eighteen (18) as of the Petition Date for whom the statute of limitations is extended under Iowa Code §614.8(2); or

      2.    Had not, as of the Petition Date, discovered the injury and the causal relationship between the injury and the Abuse, pursuant to Iowa Code §614.8A or any repressed memory exception to the Iowa statute of limitations; or

      3.    Had a mental illness disability which tolled the Iowa statute of limitations pursuant to Iowa Code §614.8(1).

2.99    Unknown Tort Claims. All Tort Claims of any Unknown Tort Claimants.

2.100    Unknown Tort Claims Fund. The reserve to be established on the Effective Date or such later dates as may be agreed upon by the Unknown Tort Claims Representative by the Settlement Trustee to hold, in one or more segregated accounts Cash or other assets in an amount of $2,500,000.

2.101    Unknown Tort Claims Process is defined in Section 11.6.

2.102    Unsecured Claim means every Claim or portion thereof, regardless of the priority of such Claim, which is not a Secured Claim.

## ARTICLE 3
## UNCLASSIFIED CLAIMS

3.1    <u>Administrative Expense Claims</u>. Each holder of an Allowed Administrative Expense Claim shall be paid in full in Cash by the Reorganized Debtor on the Claims Payment Date, except:

3.1.1    as otherwise ordered by the Court;

3.1.2    a Claim which is to be paid in the ordinary course of business of the Reorganized Debtor (including any payment terms applicable to such Claim);

3.1.3    a Post-Petition Abuse Claim, which shall be determined, and, if sustained, paid pursuant to applicable non-bankruptcy law;

3.1.4    to the extent that a holder of an Allowed Administrative Expense Claim has agreed in writing to a different treatment of such Claim; and

3.1.5    unpaid Professional Fees and non-Ordinary Course Administrative Expense Claims, which shall be paid by the Settlement Trust pursuant to Section 23.2.

3.2    <u>Priority Tax Claims</u>. The holder of any Allowed Priority Tax Claim will be paid in full satisfaction of such Claim by the Reorganized Debtor on the Claim Payment Date.

3.3    <u>Elimination of Claim</u>. To the extent there are no amounts owing on the Effective Date for any Administrative Claim-and/or any Priority Tax Claims, such treatment as set forth above will be deemed automatically eliminated from the Plan.

## ARTICLE 4
## CLASSIFICATION OF CLAIMS

4.1    <u>Classification</u>. All Claims are classified under the Plan as hereafter stated in this Article 4; provided, however, that a Claim will be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. As of the Confirmation Hearing, any Class which does not contain any Claims will be deemed deleted automatically from the Plan.

4.2    Classes. For purposes of the Plan, Claims against the Debtor are hereby classified in the following classes in accordance with Bankruptcy Code §1122(a) as follows:

4.2.1    Class 1. Priority Employee Unsecured Claims.

4.2.2    Class 2. Priority Unsecured Claims.

4.2.3    Class 3. Secured Claims.

4.2.4    Class 4. General Unsecured Convenience Claims.

4.2.5    Class 5. General Unsecured Claims.

4.2.6    Class 6. Other Tort and Employee Claims.

4.2.7    Class 7. Tort Claims.

## ARTICLE 5
## TREATMENT OF CLASS 1 CLAIMS
## (PRIORITY EMPLOYEE UNSECURED CLAIMS)

5.1    Distribution. Each holder of an Allowed Priority Employee Unsecured Claim, including vacation and sick leave pay, shall be assumed by and treated in accordance with the Reorganized Debtor's policies and procedures regarding such Claims in effect at the time such Priority Employee Unsecured Claim becomes matured and liquidated.

5.2    Impairment. Class 1 Claims are not impaired under the Plan.

## ARTICLE 6
## TREATMENT OF CLASS 2 CLAIMS
## (PRIORITY UNSECURED CLAIMS)

6.1    Distribution. Each holder of an Allowed Priority Unsecured Claim shall be paid in full in Cash by the Reorganized Debtor on the Claim Payment Date.

6.2    Impairment. Class 2 Claims are not impaired under the Plan.

## ARTICLE 7
## TREATMENT OF CLASS 3 CLAIMS
## (SECURED CLAIMS)

7.1    Distribution. To the extent there are any Allowed Secured Claims against property that is property of the Debtor, at the option of the Reorganized Debtor, either (a) the

legal, equitable and contractual rights to which such Claim entitles the holder thereof shall be left unaltered; (b) the Claim shall be left unimpaired in the manner described in section 1124(2) of the Bankruptcy Code; (c) the holder of such Claim shall receive or retain the Collateral securing such Claim; or (d) the holder of such Claim shall receive Cash from the Reorganized Debtor on the Effective Date in an amount equal to the value of the Collateral securing the Claim. To the extent the value of the Collateral is less than the amount of such Allowed Secured Claim, the deficiency shall be treated as a General Unsecured Claim. Any payments due hereunder are the responsibility of the Reorganized Debtor.

7.2     Impairment. Class 3 Claims are not impaired under the Plan. To the extent there are any such Claims in this class, each such Claim shall be deemed to be a separate subclass. Notwithstanding the foregoing, the Reorganized Debtor shall pay to the Settlement Trust all monies necessary to pay the holder of any Allowed Secured Claim on account of any Trust asset.

## ARTICLE 8
## TREATMENT OF CLASS 4 CLAIMS
## (GENERAL UNSECURED CONVENIENCE CLAIMS)

8.1     Distribution. Each holder of an Allowed General Unsecured Convenience Claim shall be paid in full in Cash by the Reorganized Debtor on or before the Claim Payment Date.

8.2     Impairment. Class 4 Claims are not impaired pursuant to the Plan.

## ARTICLE 9
## TREATMENT OF CLASS 5 CLAIMS
## (GENERAL UNSECURED CLAIMS)

9.1     Distribution. Each holder of an Allowed Class 5 Claim will be paid in Cash by the Reorganized Debtor as follows:

9.1.1   Each holder of an Allowed Class 5 Claim will be paid the Allowed amount of such General Unsecured Claim in equal monthly principal installments plus interest, with the first installment to be paid on the first Business Day that is thirty (30) days after the Claim Payment Date and succeeding monthly installments plus interest to be paid on the first

Business Day of each month thereafter until paid in full including interest so that any such Allowed Class 5 Claim is paid in full on or before the second (2nd) anniversary of the Effective Date of the Plan.

9.2    Prepayment. Nothing contained in this Section will preclude the Reorganized Debtor from prepaying all or part of an Allowed Class 5 Claim, without interest for any amounts prepaid.

9.3    Impairment. The Class 5 General Unsecured Claims are impaired under the Plan.

## ARTICLE 10
## TREATMENT OF CLASS 6 CLAIMS
## (OTHER TORT AND EMPLOYEE CLAIMS)

10.1    Distribution. Each holder of an Allowed Other Tort and Employee Claim, as and when such Claim becomes an Allowed Claim, will be paid solely from the proceeds of any insurance policies applicable to such Other Tort and Employee Claim, except for any Insurance Policies issued or allegedly issued by Settling Insurers. To the extent that such Claims may not be satisfied in full by the foregoing, then such Other Tort and Employee Claims will receive no further payment from any source.

10.2    Impairment. The Other Tort and Employee Claims are impaired under the Plan.

## ARTICLE 11
## TREATMENT OF CLASS 7 CLAIMS
## (TORT CLAIMS)

11.1    Election of Treatment of Class 7 Claims.

11.1.1    Election of Convenience Tort Claim, Matrix Tort Claim, Litigation Tort Claim or Non Releasing Litigation Tort Claim Treatment.

11.1.1.1    Election and Release. Each holder of a Class 7 Tort Claim may elect to be treated as a holder of (a) a "Convenience Tort Claim", which is a Tort Claim to be allowed and paid under the Convenience Process; (b) a "Matrix Tort Claim", which

18

is a Tort Claim to be allowed and paid under the Matrix Process; (c) a "Litigation Tort Claim", which is a Tort Claim to be allowed and paid under the Litigation Process; or (d) a "Non Releasing Litigation Tort Claim", which is a Tort Claim to be allowed and paid under the Litigation Process. Such election shall be made on such holder's Ballot, and, except in the case of an election of Non Releasing Tort Claim treatment, by executing and delivering to Debtor a "Release of Claims" in the form incorporated into the Ballot pursuant to which the Tort Claimant releases all Claims against certain third parties in exchange for the treatment of such Claims under this Plan. If the holder of a Tort Claim has settled the Claim with the Debtor and obtained Bankruptcy Court approval thereof, it is not required to elect between the four (4) options set forth above but shall be deemed a Matrix Tort Claim for distribution purposes and shall be required to execute the "Release of Claims."  Notwithstanding the foregoing, if before or after the Effective Date the holder of a Tort Claim fails to comply with an order of the Bankruptcy Court requiring a sworn statement to be given to the Special Arbitrator regarding the Abuse suffered by such Claimant, within 30 days after the date set for the taking of such statement (or such later date agreed to by the Special Arbitrator or set by the Bankruptcy Court), such holder shall be treated as a holder of a Convenience Tort Claim.

11.1.1.2   Petition by Litigation Tort Claimant and Non Releasing Litigation Tort Claimants: Release by Non Releasing Litigation Tort Claimants. If holder of a Litigation Tort Claim or a Non Releasing Litigation Tort Claim has not filed a petition alleging such claim in Iowa District Court before making an election to be treated as a holder of a Litigation Tort Claim or a Non Releasing Litigation Tort Claim, such holder must file and serve on the Settlement Trustee such a petition within sixty (60) days after the Effective Date. If a holder of a Litigation Tort Claim does not file such petition, such holder shall be treated as a holder of a Convenience Tort Claim, which election shall be irrevocable. If a holder of a Non Releasing Litigation Tort Claim does not file such petition, such holder shall be treated as a holder of a Convenience Tort Claim.

11.1.1.3    Amended Election by Holders of Matrix Tort Claims, Litigation Tort Claims and Non Releasing Litigation Tort Claims.

11.1.1.3.1    At any time prior to earliest of the date on which the Settlement Trustee has filed a dispositive motion with respect to, or trial has commenced on, the Claim of a holder of a Litigation Tort Claim or a Non-Releasing Litigation Tort Claim, such holder may amend his or her election to instead elect treatment as the holder of a Convenience Tort Claim or Matrix Tort Claim by delivering a written notice of such election (and in the case of a holder of a Non-Releasing Litigation Tort Claim, a Release of Claims) to the Special Arbitrator and the Settlement Trustee. Any such amended election shall be irrevocable. Except as provided in this Section 11.1.1.3.1, an election of treatment as a holder of a Litigation Tort Claim or a Non-Releasing Litigation Tort Claim is irrevocable. Any such amended election shall be deemed to be a consent to a limitation of the amount of any distribution with respect to such holder's Allowed Claim to the lesser of:

(a)    the portion of the Litigation Fund or Non-Releasing Litigation Fund which bears the same proportion to the total of such Fund as the amount of such holder's Litigation Tort Claim or Non-Releasing Litigation Tort Claim as fixed under Section 11.2.3 bears to the amount of all Litigation Tort Claim or Non-Releasing Litigation Tort Claim as fixed under Section 11.2.3, minus

(i)    all pre litigation and litigation professional fees and expenses attributable to such Claim which accrued through the date of such amended election, and

(ii) the portion of all other Settlement Trust Costs and Expenses allocated to the Litigation Fund or the Non-Releasing Litigation Fund which accrued through the date of such amended election which bears the same proportion to all such Settlement Trust Costs and Expenses as the amount of such holder's Litigation Tort Claim or Non-Releasing Litigation Tort Claim as estimated under the Plan bears to the amount of all Litigation Tort Claim or Non-Releasing Litigation Tort Claim as estimated under Section 11.2.3, or

20

(b)    the distribution such holder would have received if such amended election had been such holder's initial election or deemed election, and such holder's Claim had been included in determining the amount of the applicable Fund (e.g., the Matrix Fund in the case of an amended election to be treated as the holder of a Matrix Tort Claim, etc.) under the Plan.

The amount so determined shall be transferred from the Litigation Fund or the Non-Releasing Litigation Fund to the Fund from which such amended Claim will be paid.

11.1.1.3.2   Matrix Tort Claim. At any time prior to final Allowance or Disallowance of a Matrix Tort Claim, the holder of such Claim may amend his or her election or deemed election to instead elect treatment as the holder of a Convenience Tort Claim by delivering a written notice of such election to the Special Arbitrator. Any such amended election shall be irrevocable. Except as provided in this Section 11.1.1.3.2, an election or deemed election of treatment as a holder of a Matrix Tort Claim is irrevocable. If the amended Claim is Allowed, the allowed amount payable on account, of such amended Claim shall be transferred from the Matrix Fund to the Convenience Fund from which such amended Claim will be paid.

11.1.1.4   Deemed Election of Matrix Tort Claim or Non Releasing Litigation Tort Claim Treatment. Each holder of a Class 7 Tort Claim (except the Unknown Tort Claims Representative, Unknown Tort Claimants, or a Claimant who has settled the Tort Claim with the Debtor) who does not elect to be treated as a holder of a Convenience Tort Claim, a Matrix Tort Claim or a Litigation Tort Claim by making such election on such holder's Ballot and executing and delivering to Debtor on or before the Ballot Deadline a Release of Claims shall be treated as a holder of a Convenience Tort Claim, which treatment shall be irrevocable, and be deemed to have executed and delivered a Release of Claims. Notwithstanding the foregoing, Settlement Trustee shall give such holder notice within fifteen (15) days after the Effective Date of such treatment and his or her right to elect alternative treatment as set forth in the Plan and on the Ballot. If such holder does not execute and deliver to the Settlement Trustee an

election of treatment and, as appropriate, a Release of Claims within thirty (30) days after the Effective Date, such holder shall be deemed a holder of a Convenience Tort Claim.

11.1.2 <u>Unknown Tort Claims</u>. The Unknown Tort Claims shall be allowed and paid through the Unknown Tort Claims Process.

11.1.3 <u>Combined Voting</u>. For purposes of accepting or rejecting the Plan, all Class 7 Tort Claims shall be treated as a single class.

11.2    <u>Allocation of Estate Fund and Release Fund</u>. As soon as practicable after the Effective Date, the Settlement Trustee shall establish a reserve ("Settlement Trust Reserve") for the costs and expenses of administration of the Settlement Trust, including but not limited to fees and expenses, including Professional Fees, of the Special Arbitrator and Settlement Trustee, of all unpaid pre and post confirmation Professional Fees payable by the Settlement Trust and reasonable contingencies therefor ("Settlement Trust Costs and Expenses"). From time to time thereafter, the Settlement Trustee may increase the Settlement Trust Reserve. The Settlement Trust Reserve shall be funded from the Estate Fund (32%) and the Release Fund (68%) ("Funding Proportion"). As soon as practicable after the Effective Date, the balance of the Estate Fund and the Release Fund shall be allocated as follows:

11.2.1 <u>Convenience Fund</u>. An amount equal to the sum of: (a) all Allowed Convenience Tort Claims and (b) other Convenience Tort Claims multiplied by $10,000 to a fund for payment of the aggregate Allowed Convenience Tort Claims ("Convenience Fund"). The Convenience Fund shall be funded from the Estate Fund and the Release Fund in accordance with the Funding Proportion.

11.2.2 <u>Unknown Tort Claims Fund</u>. $2,500,000 for Allowed Unknown Tort Claims ("Unknown Tort Claims Fund"), charged to the Estate Fund and the Release Fund in accordance with the Funding Proportion.

11.2.3 <u>Matrix Fund, Litigation Fund, and Non Releasing Litigation Fund</u>. If any Tort Claimant elects to be treated as the holder of a Litigation Tort Claim or a Non Releasing Litigation Tort Claim, the Special Arbitrator shall determine the Matrix Tort Claims in

22

accordance with Section 11.4 and reserve the dollar value totals for Litigation Tort Claims and for Non Releasing Litigation Tort Claims, respectively. In order to reserve values the Special Arbitrator shall assign each Litigation Tort Claim and for Non Releasing Litigation Tort Claim to the appropriate tier and assign to each such Tort Claim a dollar value which is at the midpoint of the tier's dollar range. After the Special Arbitrator has made the foregoing reservation calculations, he shall promptly notify the Settlement Trustee of such calculations.

In making the calculations set forth in the paragraph above, the balance of the Estate Fund, net of the portion of the Settlement Trust Reserve, the Convenience Fund and the Unknown Tort Claims Fund charged to the Estate Fund, shall be allocated (i) to a fund for payment of the aggregate Allowed Matrix Tort Claims ("Matrix Fund"), (ii) to a fund for the payment of the aggregate Allowed Litigation Tort Claims ("Litigation Fund"), and (iii) to a fund for the payment of the aggregate Allowed Non Releasing Litigation Tort Claims ("Non Releasing Litigation Fund") based on the relative proportions of (a) the sum of the dollar values for all Allowed Matrix Tort Claims, (b) the sum of the dollar value of all estimated Litigation Tort Claims, and (c) the sum of the dollar value of all estimated Non Releasing Litigation Tort Claims. The balance of the Release Fund, net of the portion of the Settlement Trust Reserve, the Convenience Fund and the Unknown Tort Claims Fund charged to the Release Fund, shall be finally and conclusively allocated to the Matrix Fund and the Litigation Fund based on the relative proportions of (a) the sum of the dollar value all Allowed Settled Matrix Tort Claims, and (b) the sum of the dollar value all estimated Litigation Tort Claims.

The sole and exclusive purpose of the Settlement Trust Reserve, the Convenience Fund, the Matrix Fund, Litigation Fund, Non-Releasing Litigation Fund and Unknown Tort Claims Fund (collectively the "Funds") is to pay the Claims set forth above. The Debtor, Reorganized Debtor, Settling Insurers and Non-Settling Insurers shall have no recourse to any of the Funds, except for unpaid Professional Fees or fees payable to counsel for the Reorganized Debtor and Non-Ordinary Course Administrative Expenses payable by the Settlement Trust Reserve pursuant to Section 23.2.

11.2.4 <u>Separate Administration</u>. After the Estate Fund and the Release Fund are allocated to a Fund pursuant to this Section 11.2, such Fund shall be separately administered by the Settlement Trustee; and all Settlement Trust Costs and Expenses of each such Fund, including costs of litigating or otherwise determining Tort Claims potentially payable from such Fund, shall be borne solely by such Fund; provided, however, that if there is any balance remaining in the Convenience Fund after all Allowed Convenience Claims payable from such Fund are paid in full, and all Settlement Trust Costs and Expenses of such Fund are paid in full, such balance shall be distributed to the Matrix Fund, the Litigation Fund, and the Non Releasing Litigation Fund in proportion to the original amount of such Funds; provided further, that if there is any balance remaining in the Litigation Fund or the Non Releasing Litigation Fund after all Allowed Claims payable from such Fund are paid in full, and all Settlement Trust Costs and Expenses of such Fund are paid in full, such balance shall be distributed to the Matrix Fund.

11.3     <u>Convenience Process</u>.

11.3.1 <u>Distribution</u>. Each holder of an Allowed Convenience Tort Claim shall be paid such holder's Allowed Claim in Cash by the Settlement Trust from the Convenience Fund on the later of the Claim Payment Date or the date which is 30 days after the date on which a portion of the Estate Fund and a portion of the Release Fund is allocated to the Convenience Fund.

11.3.2 <u>Allowance</u>. Except for allowances on claims subject to amendment elections as set forth in Section 11.1.1.3, a Convenience Tort Claim shall be allowed in the amount of $10,000 if the Special Arbitrator determines based on the Tort Claimant's proof of claim in the Bankruptcy Case and, if requested by the Special Arbitrator, the Tort Claimant's Questionnaire that a preponderance of the evidence shows that the Tort Claimant was Abused. The Special Arbitrator shall not consider (i) any applicable statute of limitations or (ii) the passage of time since the date(s) of such Abuse, or (iii) any other defenses of Debtor, in making such determination. The Special Arbitrator may, however, consider the credibility of the Tort Claimant and the facts alleged in support of the Claim.

11.4    Matrix Process.

11.4.1 Matrix Protocol. The Matrix Protocol shall be implemented and enforced by the Settlement Trustee and the Special Arbitrator as though fully set forth herein.

11.4.2 Distribution. Before any distribution(s) to any Allowed Matrix Tort Claim, the Settlement Trustee shall subtract from the Matrix Fund an amount equal to the actual fees and reimbursable expenses payable to Qualified Counsel pursuant to written retainer or fee agreements with a Tort Claimant ("Qualified Counsel Fees"). The Settlement Trustee shall disburse the Qualified Counsel Fees to Qualified Counsel as fees in accordance with the retainer agreements between the Qualified Counsel and the holder of the Allowed Matrix Tort Claim, provided that no Qualified Counsel shall receive in excess of the amounts owed under such retainer or fee agreements. Each holder of an Allowed Matrix Tort Claim shall be paid in Cash by the Settlement Trust after deduction for Qualified Counsel Fees, if any, within 30 days after the later of the date on which all Matrix Tort Claims have been Finally Determined.

11.4.3 Allowance.

11.4.3.1    Matrix Tort Claim. A Matrix Tort Claim shall be allowed if the Special Arbitrator determines that the Tort Claimant has proved by a preponderance of the evidence that the Tort Claimant was Abused. Except for allowances on claims subject to amendment elections as set forth in Section 11.1.1.3, if a Matrix Tort Claim is allowed, the Special Arbitrator shall assign such Tort Claim a dollar value pursuant to the Matrix Protocol; provided that the total value of the Matrix Tort claims shall not exceed the Matrix Fund available for distribution. The Special Arbitrator may consider the credibility of the Tort Claimant and the facts alleged in support of the Tort Claim and, in the Special Arbitrator's sole discretion, reduce or deny the Tort Claim.

After the Special Arbitrator has assigned dollar values to each Matrix Tort Claim which value shall not exceed the Matrix Fund available for distribution to Matrix Tort Claimants and  he shall promptly notify the Settlement Trustee of such assignments. Notwithstanding any other provision in the Plan Documents, the dollar values assigned to the Matrix Tort Claims shall be confidential.

11.5    Litigation Process.

11.5.1 Distribution.

11.5.1.1    Allowed Litigation Tort Claim. Each holder of an Allowed Litigation Tort Claim shall be paid in Cash by the Settlement Trust such holder's pro rata share of the Litigation Fund within thirty (30) days after of the later of the date on which all Litigation Tort Claims have been Finally Determined.

11.5.1.2    Allowed Non Releasing Litigation Tort Claim. Each holder of an Allowed Non-Releasing Litigation Tort Claim shall be paid in Cash by the Settlement Trust such holder's pro rata share of the Non-Releasing Litigation Fund within 30 days after of the later of the date on which all Non Releasing Litigation Tort Claims have been Finally Determined.

11.5.2 Allowance. Allowance of a Litigation Tort Claim or a Non Releasing Litigation Tort Claim shall be determined either by a final judgment of the Iowa District Court (except in the case of a Tort Claimant who filed a petition before the Petition Date, in the court in which such petition is pending), or a settlement between the Tort Claimant and the Settlement Trustee after the Settlement Trustee consults with the Special Arbitrator. Any such Litigation Tort Claim or Non Releasing Litigation Tort Claim is subject to all defenses, including but not limited to the applicable statute of limitations, available to Debtor. Nothing in this Plan shall affect any right the holder of a Litigation Tort Claim or Non-Releasing Litigation Tort Claim to demand a jury trial under applicable law.

11.6    Unknown Tort Claims Process.

11.6.1 Unknown Tort Claims Representative's Tort Claim. The Unknown Tort Claims Representative's Tort Claim shall be deemed satisfied when the Unknown Tort Claims Fund is fully funded.

11.6.2 Allowance and Distribution of Unknown Tort Claims.

11.6.2.1    Distribution. Each holder of an Allowed Unknown Tort Claim which is filed on or before the tenth (10th) anniversary of the Effective Date ("Unknown

26

Tort Claim") shall be paid in full in Cash by the Settlement Trust from the Unknown Tort Claims Fund within thirty (30) days after the later of the date on which such Unknown Tort Claim is Finally Determined or the date on which the Unknown Tort Claims Fund is initially funded as provided for in the Plan.

11.6.2.2    Allowance. The holder of an Unknown Tort Claim may elect to proceed with allowance under the "Unknown Tort Claim Matrix Process" (defined below) or the "Unknown Tort Claim Litigation Process" (defined below) by (i) filing with the Special Arbitrator a Proof of Claim in the form to be developed and furnished by the Special Arbitrator which elects the Unknown Tort Claim Matrix Process, or (ii) filing a petition in the Iowa District Court which elects the Unknown Tort Claim Litigation Process. Each Proof of Claim by a holder of an Unknown Tort Claim electing the Unknown Tort Claim Matrix Process must include a Release of Claims. An Unknown Tort Claim Allowed under this Section 11.6.2.2 is referred to as an "Allowed Unknown Tort Claim."

11.6.2.2.1      Unknown Tort Claim Matrix Process.

(a)      Allowance. If a holder of an Unknown Tort Claim elects to proceed with allowance under the Matrix Process, such Claim shall be allowed (a) if the Special Arbitrator determines that the holder of such Claim has proved by a preponderance of the evidence (i) that such holder was Abused, and (ii) that the applicable statute of limitations under applicable non-bankruptcy law had not begun to run on or before October 10, 2006; and (b) if the Special Arbitrator does not find that there is clear, cogent and convincing evidence that the applicable statute of limitations under applicable non-bankruptcy law had run (i) after October 10, 2006, and (ii) before the date the holder of such Claim filed a Proof of Claim. The Special Arbitrator shall determine the amount of such Claim by assigning such Claim a dollar value pursuant to the Matrix Protocol. The Special Arbitrator may consider the credibility of the Tort Claimant and the facts alleged in support of the Tort Claim and, in the Special Arbitrator's sole discretion, reduce or deny the Tort Claim.  The dollar value assigned to an Unknown Tort Claimant electing the Matrix Process shall be confidential.

(b)     <u>Amendment</u>. At any time prior to final allowance or disallowance of an Unknown Tort Claim under the Unknown Tort Claim Matrix Process, the holder of such Claim may settle the Unknown Tort Claim with the Special Arbitrator.

11.6.2.2.2     <u>Unknown Tort Claim Litigation Process</u>.

(a)     <u>Allowance</u>. If a holder of an Unknown Tort Claim elects to proceed with allowance under the Litigation Process, such Claim shall be determined either by a trial of such Claim conducted by the Iowa District Court, or a settlement between the holder of such Claim and the Settlement Trustee. Such Claim is subject to all defenses, including but not limited to the applicable statute of limitations, available to Debtor.

(b)     <u>Amendment</u>. At any time prior to the earliest of the date on which the Settlement Trustee has filed a dispositive motion with respect to, or trial has commenced on, an Unknown Tort Claim being determined under the Unknown Tort Claim Litigation Process, the holder of such Claim may amend his or her election to instead elect treatment under the Unknown Tort Claim Matrix Process by delivering a written notice of such election to the Special Arbitrator and the Settlement Trustee. Any such amended election shall be irrevocable. Any such amended election shall be deemed to be a consent to a reduction of the amount of any distribution with respect to such holder's Allowed Claim by the amount of all pre litigation and litigation Professional Fees and expenses, and all other Settlement Trust Costs and Expenses attributable to such Claim which accrued through the date of such amended election.

11.6.3 <u>Unknown Tort Claims Filed after Tenth (10th) Plan Anniversary Barred</u>. All Unknown Tort Claims filed after the tenth (10th) anniversary of the Effective Date shall have no right to payment or any other right under this Plan, and all such Claims shall be discharged under Article 18 of the Plan.

11.7     <u>Effect of Disallowance</u>. If a Tort Claim is Disallowed, the holder of such Claim shall have no further rights against the Debtor, the Reorganized Debtor, the Catholic Entities or a Settling Insurer, the Settlement Trust or any Fund.

11.8    Succession to Debtor's Rights and Defenses. Subject to the terms of the Plan regarding Convenience Tort Claims and Matrix Tort Claims, the Settlement Trustee shall succeed to all of the Debtor's rights, defenses, counterclaims, setoffs and recoupments with respect to all Tort Claims. The Settlement Trustee shall have complete control of litigation and settlements of Litigation Tort Claims, Non Releasing Litigation Tort Claims and Unknown Tort Claims the holders of which elect to proceed with allowance under the Unknown Tort Claim Litigation Process. The Special Arbitrator shall have no authority to participate in such litigation or to settle such Tort Claims. The Special Arbitrator shall have complete control of all Matrix Tort Claims. No one except the Tort Claimant being determined and the Special Arbitrator, the Settlement Trustee, or to the extent of applicable law, a Non-Settling Insurer (and all of the foregoing entities' counsel), as appropriate, shall have standing to participate in such proceedings. Any Person may provide information about a Tort Claim or state a position with respect to a Tort Claim to the Special Arbitrator or the Settlement Trustee, which information or statement of position shall be transmitted to the affected Tort Claimant. The Special Arbitrator or the Settlement Trustee in furtherance of the their respective duties and obligations (with due regard to the interest of a Tort Claimant to have information about his or her identity kept confidential) shall have the absolute right to provide any party in interest (excluding the Debtor, Reorganized Debtor, Catholic Entities and Settling Insurers) with any and all information regarding a Tort Claim that is in the possession, custody or control of the Special Arbitrator, the Settlement Trustee or the Reorganized Debtor, including the Questionnaire and the information constituting proof of Abuse described below, subject to obtaining an agreement with the party in interest to keep such information confidential, including redaction of identifying personal information. The Special Arbitrator or the Settlement Trustee, as the case may be, shall give the Tort Claimant notice and an opportunity to object before providing such information, but the decision of the Special Arbitrator or Settlement Trustee on such objection shall be final and not subject to any appeal, review or protective order. The foregoing provisions are not intended to limit the Reorganized Debtor, Catholic Entities, Settling Insurers, or any other Person or Entity

29

from obtaining any information or documents that they may be entitled to receive by service of process under applicable non-bankruptcy law.

Debtor, the Reorganized Debtor and their counsel shall provide a copy of its complete file with respect to every Tort Claim to the Settlement Trustee and to the Special Arbitrator (with respect to claims to be determined by the Special Arbitrator), and shall cooperate fully with the Special Arbitrator and the Settlement Trustee as reasonably requested. Upon receipt of said file, the Special Arbitrator shall promptly send a copy thereof to the holder of the Tort Claim that is the subject of the file. The Committee and the Unknown Tort Claims Representative and their counsel shall cooperate fully with the Special Arbitrator and the Settlement Trustee as requested. The expenses for attorneys' fees and costs incurred by Debtor's, Reorganized Debtor's, Committee's and Unknown Tort Claims Representative's counsel at the request of the Special Arbitrator or the Settlement Trustee shall be paid by the Settlement Trust. To the extent necessary, the Settlement Trustee and the Special Arbitrator are hereby designated as Estate representatives pursuant to and in accordance with Bankruptcy Code §1123(b)(3)(B).

11.9    Questionnaire and Evidence of Abuse. Within thirty (30) days after written request therefor from the Special Arbitrator, each holder of a Tort Claim to be determined by the Special Arbitrator shall complete under oath the Questionnaire, shall produce all records and documents requested by the Special Arbitrator, shall consent to and cooperate in any examinations requested by the Special Arbitrator and performed by health care professionals selected by the Special Arbitrator, and shall consent to and cooperate in a written and/or oral examination under oath by the Special Arbitrator. The Special Arbitrator also may, but shall not be required to, obtain evidence from the Debtor, the Reorganized Debtor or any other party, and shall have all of the rights and powers of the Debtor to take discovery under Part VII of the Bankruptcy Rules. The Special Arbitrator's determination shall be made expeditiously.

11.10   Determinations by Special Arbitrator and Requests for Reconsideration. The Special Arbitrator shall notify the Tort Claimant in writing of the Special Arbitrator's determination with respect to the Tort Claimant's Claim, which determination shall be final unless

30

the Tort Claimant makes a timely request for reconsideration and shall not be subject to any appeal. The Tort Claimant may request reconsideration of such determination by delivering a written request for reconsideration to the Special Arbitrator within 20 days after the date of the Special Arbitrator's determination, and may submit additional evidence and argument in support of such request with such request. No other person may request reconsideration or submit additional evidence or argument. The Special Arbitrator shall notify the Tort Claimant in writing of the Special Arbitrator's determination of such request for reconsideration. The Special Arbitrator's determination of such request for reconsideration shall be final and not subject to any appeal.

11.11 <u>All Information about Tort Claimants Confidential</u>. Subject to Section 11.9, all information the Settlement Trustee or the Special Arbitrator receive from any source about any Tort Claim, and all information the Settlement Trustee, the Special Arbitrator, the Debtor or the Reorganized Debtor provide to another party, shall be held strictly confidential and shall not be disclosed to any third party, except to the extent ordered by a court of competent jurisdiction in connection with a Litigation Tort Claim. Any Non-Settling Insurer shall be entitled to a copy of all such information relating to any Tort Claim it is investigating, evaluating, handling or defending, or is relevant to any Insurance Company defense, provided such Non-Settling Insurer enters into an appropriate confidentiality agreement.

11.12 <u>Discretion to Defer or Accelerate Payments</u>.

11.12.1 <u>Deferral</u>. The Settlement Trustee shall have the discretion to defer or pro rate any distribution to holders of Allowed Tort Claims if the Settlement Trustee determines that there are not sufficient funds available to pay all such Tort Claims on the date when such distribution is payable.

11.12.2 <u>Acceleration</u>. Promptly after the date on which the Convenience Fund has been funded and sufficient funds are available from other Funds, the Settlement Trustee may make an interim distribution of $15,000 per Claim to holders of Matrix Tort Claims which have not yet been allowed and as to which the Special Arbitrator has determined that there is not a material likelihood that the Claim of such holder will receive less than $15,000.

11.13    Counseling. On account of and for the benefit of each Unknown Tort Claimant, the Reorganized Debtor shall pay for counseling by a licensed mental health care provider pursuant to the Debtor's current policy for providing such services. Counseling shall be provided for each other Tort Claimant until 60 days after their Claim is Finally Determined.

11.14    Non Monetary Undertakings of the Debtor. The Non-Monetary Undertakings set forth in Article 24 of the Plan are a material part of the treatment of Class 7 Tort Claims.

11.15    Application on Non-Debtors. While the obligations of the Settlement Trust (including obligations of the Special Arbitrator and the Settlement Trustee) to pay holders of Class 7 Tort Claims, and the timing of payments by the Settlement Trust, shall be determined pursuant to the Plan, to the extent any such Tort Claim (including any Contribution Actions) is asserted against a Non-Debtor and Insurance Coverage is sought, the Claim must be validly and effectively tendered to the applicable Insurance Company and the Insurance Company may respond to the Tort Claim as between itself and the Tort Claimant (or any Person or Entity acting in his/her stead) just as it would or could have outside bankruptcy. The propriety and effectiveness of any tender to the Insurance Company, will be determined under the Insurance Policy and applicable State law. Any such Insurance Company will be entitled to all rights as are provided under the terms of the relevant Insurance Policy and applicable State law, including any right to control and manage the defense of the Tort Claim against the Non-Debtor as if the Tort Claim had never been treated or Resolved for Payment under the Plan. The Non-Debtor insured and/or any entity standing in its stead by virtue of a valid assignment of rights under an Insurance Policy or valid assumption of, succession to, the insured's rights to object to, resolve or defend the claim, shall be obligated to perform the insured's obligations under such Insurance Policy, including any duty of cooperation, to the extent that the Insurance Policy and/or State law so provides. Any right of a Non-Debtor insured, or any assignee or other Person or Entity acting in its stead, to settle, litigate or otherwise resolve any Tort Claims for payment after, or in lieu of

tender of such claims to the Insurance Company shall be determined by the applicable Insurance Policy and the applicable State law.

        11.16  Impairment. The Class 7 Tort Claims are impaired pursuant to the Plan.

## ARTICLE 12
## SETTLEMENT TRUST AGREEMENT; SELECTION
## OF SETTLEMENT TRUSTEE AND SPECIAL ARBITRATOR

        12.1   Settlement Trust Agreement. On the Effective Date, the Reorganized Debtor and the Settlement Trustee shall execute and commence implementing the Settlement Trust.

        12.2   Selection Of Settlement Trustee and Special Arbitrator. The Settlement Trustee shall be Robert L. Berger and the Special Arbitrator shall be Richard M. Calkins. If the Special Arbitrator or the Settlement Trustee resigns or becomes unable to serve a party in interest may nominate a successor, whose appointment shall be subject to the approval of the Judge assigned to the case at that time, after notice and a hearing.

        12.3   Tax Matters. The Settlement Trust is expected to be tax exempt. The Settlement Trustee shall file such income tax and other returns and documents as are required to comply with applicable provisions of the Internal Revenue Code and the treasury regulations promulgated thereunder, and Iowa law and the regulations promulgated thereunder. The Settlement Trustee will be pay from the Settlement Trust any taxes, assessments and levies on the Settlement Trust, if any. The Settlement Trustee shall make such elections and provide such information as may be necessary for the Settlement Trust to qualify as a Designated Settlement Fund under the Internal Revenue Code. If permitted by State law, the Settlement Trustee will make elections and file statements to be treated as a Designated Settlement Fund under Iowa State law.

## ARTICLE 13
## MEANS OF IMPLEMENTATION OF THE PLAN

        13.1   Debtor's Transfers to Settlement Trust.

        13.1.1  Debtor's Transfers. On and as a condition to the Effective Date, the Reorganized Debtor shall: (a) transfer to the Settlement Trustee $33.1 million ($33,100,000)

in Cash and (b) deliver to the Settlement Trustee a standard Iowa form of deed to the Chancery.
The $33.1 million in cash and the proceeds of sale of the Chancery shall be used to pay Tort
Claims, Professional Fees, and Settlement Trust Costs and Expenses (including the Chancery,
collectively, the "Trust Property"):

13.1.2 <u>Allocation of Trust Property</u>. The Settlement Trustee shall allocate
all Cash and proceeds of the Trust Property, when received, between two separate funds:  the
Estate Fund and the Release Fund.

13.1.3 The Estate Fund shall be deemed to consist of 32% of the cash and
proceeds of Trust Property and the Release Fund shall be deemed to consist of 68% of the cash
and proceeds of Trust Property.

13.2    <u>Revesting of Debtor's Property</u>. Except as otherwise provided in this Plan
or in the Confirmation Order, on the Effective Date, all real and personal property of the Debtor
shall revest in the Reorganized Debtor, free and clear of all Claims, liens, encumbrances, charges
and other interests of Creditors. As of the Effective Date, the Reorganized Debtor may hold, use,
dispose and otherwise deal with its property and conduct its affairs free of any restrictions
imposed by the Bankruptcy Code or the Bankruptcy Court, other than those restrictions and
limitations expressly imposed by the Plan, the Confirmation Order and any other Plan documents.

13.3    <u>Insurance Settlements</u>. To the extent not previously approved by the
Bankruptcy Court, the insurance settlements listed in Schedule 13.3 ("Insurance Settlements"),
and the Settlement Agreements providing for such Insurance Settlements, shall be approved upon
entry of and as a part of the Confirmation Order. All of the Settling Insurers listed in Schedule
13.3 have entered into such Insurance Settlements and Settlement Agreements in consideration of
Confirmation of the Plan and have paid or will pay the consideration set forth in the Settlement
Agreements to or for the benefit of the Debtor, the Estate and the Settlement Trust.  On or before
the Effective Date, the Debtor, in accordance with the terms of the Settlement Agreements and
orders approving such Settlement Agreements, shall release its claims to coverage under the
Insurance Policies covered by the Settlement Agreements in consideration of entry of the Settling

34

Insurer Injunction. If an Insurance Settlement is reached with a Insurance Company after the Effective Date, such settlement will be approved by the Bankruptcy Court pursuant to its retained jurisdiction. A Settling Insurer will obtain the benefit of the Settling Insurer injunction pursuant to Section 18.5 regardless of whether the Insurance Company becomes a Settling Insurer before or after the Effective Date.

13.4    Disposition of Unknown Tort Claims Fund. After all Unknown Tort Claims have been determined by a Final Order and all Allowed Unknown Tort Claims and all Settlement Trust Costs and Expenses with respect to Unknown Tort Claims have been paid in full, the Plan Trustee shall donate any balance of the Unknown Tort Claims Fund to a recognized charity substantially engaged in providing services to persons who have been sexually abused as minors.

13.5    Retention of Rights. Except as otherwise provided in the Plan, the Debtor and/or the Reorganized Debtor shall retain all of their rights, defenses, setoffs or recoupment with respect to any Claim, except Tort Claims.

13.6    Catholic Entities Settlement. Subject to Section 11.15 and Section 13.7, on the Effective Date, the Plan and Confirmation Order shall effectuate the settlement and compromise of all Tort Claims, including, without limitation, Unknown Tort Claims, against any and all Catholic Entities. In exchange for the consideration given by the Catholic Entities under the Plan, including, without limitation, payments to the Diocese for its payment to the Settlement Trust, the Catholic Entities shall be deemed Settling Parties entitled to all of the benefits and protections under the Plan, including, without limitation, the Permanent Injunction against Channeled Claims.

In further consideration of the settlement made herein, and subject to the Insurance Company Defenses and Section 13.7, on the Effective Date the Catholic Entities shall be deemed to have assigned and transferred to the Reorganized Debtor all of the Catholic Entities' right, title and interest in and to the proceeds of all Contribution Actions and Insurance Claims of every kind and nature which they may hold and all rights to payment under any Insurance Policy issued or allegedly issued by any Non-Settling Insurer, including any claims or causes of action for

35

breach of contract; wrongful denial of coverage; failure to defend or indemnify or settle relating to any Tort Claim, including, without limitation, Unknown Tort Claims; and all proceeds or rights to receive payment from any Non-Settling Insurer, whether or not the Debtor or the Reorganized Debtor was an insured party under any such Insurance Policy issued or allegedly issued by a Non-Settling Insurer. Subject to the Insurance Company Defenses, the Reorganized Debtor will succeed to the Debtor's and the Catholic Entities' right to receive the proceeds or payments from claims and rights of every kind or nature against the Non-Settling Insurers, including the right to receive the proceeds from any and all Insurance Recoveries from Non-Settling Insurers. Except as provided in Settlement Agreements with Settling Insurers rights to proceeds and payments shall inure solely to the benefit of the Reorganized Debtor without any obligation whatsoever for the Reorganized Debtor to pay, reimburse, surrender or disgorge any such Insurance Recoveries to any other Person, including, without limitation, the Tort Claimants or the Settlement Trust, and the Reorganized Debtor shall retain any such proceeds and payments from the Insurance Recoveries for its own benefit and account. Provided, however, the proceeds and payments with respect to any Diocese Insurance Policy, or any settlement proceeds with respect to any Diocese Insurance Policy, shall be paid and delivered to the Settlement Trustee upon receipt. The Reorganized Debtor shall provide prompt written notice to the Settlement Trustee of any demands against a Non-Settling Insurer and of any proceeding to enforce claims against a Non-Settling Insurer relating to a Diocese Insurance Policy.

13.7    <u>Insurance Neutrality Provisions</u>. Subject to Sections 18.5 and 18.6, nothing in this Plan or Confirmation Documents shall be construed to resolve in any way the Reorganized Debtor's or any other Entity's Claims or rights (either as assignee of any insurance proceeds payable to Debtor and/or Catholic Entities, in its own right or otherwise) against the Non-Settling Insurers, including, without limitation, any and all Insurance Claims and Contribution Actions. No provision of this Plan, the Plan Documents, the Release of Claims or the Confirmation Documents will in any way operate or be construed to release or impair, or have the effect of impairing or releasing, the Non-Settling Insurers' legal, equitable, or contractual rights

relating to the Insurance Policies issued or allegedly issued by any Non-Settling Insurers. It is intended that the settlement provided for in this Plan with the Tort Claimants, including the Unknown Tort Claimants, shall inure to and for the benefit of the Settling Parties and shall not, directly or indirectly, inure to or for the benefit of any Non-Settling Insurers.

Notwithstanding any other provision of the Confirmation Documents including any preemptory or supervening provisions but subject to Sections 18.5 and 18.6, none of the Confirmation Documents or any order of the Court shall in any way operate to or have the effect of impairing the legal, equitable or contractual rights of any Non-Settling Insurer that insured or is alleged to have insured a Non-Debtor, including its right to assert any Insurance Company Defenses, which rights are fully preserved. As to any Non-Settling Insurer, none of the Confirmation Documents shall be, or be binding as, *res judicata* or collateral estoppel, or constitute a trial or hearing on the merits or an adjudication or judgment as to any Tort Claim, Contribution Action, Insurance Claim, or assertion of Insurance Company Defenses. No order, determination, conclusion or finding made in the Reorganization Case, including the Confirmation Order, or any appeal therefrom, will be used, offered, cited or argued in or as to any Insurance Claim or Contribution Action against a Non-Settling Insurer, except to: (i) show that the letter and intent of the Plan is to preserve the Insurance Company Defenses and insurance neutrality as set forth in this Section 13.7 of the Plan; (ii) ensure preservation of rights and obligations set forth in Section 11.15 of the Plan; (iii) ensure the preservations and protections of Non-Settling Insurers rights set forth in the order approving the Settlement Agreement; and/or (iv) enforce subject to 18.6 the Settling Insurer Injunction set forth in Section 18.5.

As to any Non-Settling Insurer, none of the Confirmation Documents or any order of the Court shall be, or be binding as, *res judicata* or collateral estoppel, constitute a trial or hearing on the merits, or an adjudication or judgment, or be argued, cited or offered into evidence or used for any purpose to prove or show (including, without limitation proving or showing in or as to any Insurance Claim or Contribution Action or other litigation concerning an Insurance Policy or the obligations of any Non-Settling Insurer):

37

(i) that the Confirmation Documents constitute a judgment, settlement or resolution of any Tort Claim;

(ii) that any Non-Settling Insurer participated in the negotiation of the Plan;

(iii) that any Non-Settling Insurer is liable for, or otherwise obligated to pay, with respect to any Tort Claim;

(iv) that any Non-Debtor (including Sacred Heart Cathedral), Reorganized Debtor or the Settlement Trust (including the Special Arbitrator or Settlement Trustee) or any other Person or Entity have satisfied any term or condition for payment from any Insurance Company, or whether any obligation of any Non-Settling Insurer has been triggered;

(v) that any Non-Debtor (including Sacred Heart Cathedral), Debtor, Reorganized Debtor, the Settlement Trust (including the Special Arbitrator and Settlement Trustee) or any other Person or Entity have suffered an insured loss or that the amount paid by the Non-Debtor (including Sacred Heart Cathedral) to the Debtor, Reorganized Debtor or the Settlement Trust in connection with any settlement or resolution of Tort Claims is reasonable or appropriate;

(vi) that the procedures and values established by the Plan and other Confirmation Documents, including the Matrix Protocol, for evaluating and paying the Tort Claims are (x) appropriate or reasonable, (y) consistent with any procedures to evaluate or settle Tort Claims before the Petition Date or (z) reasonable or consistent with any procedures used to evaluate or settle Tort Claims;

(vii) that the settlement of, Resolution for Payment of, or the value assigned to, any individual Tort Claim, pursuant to the Plan, including the Matrix Protocol, or by the Settlement Trustee or Special Arbitrator, is reasonable and/or otherwise appropriate, or relates in whole or in part to the liability of any Catholic Entity (including Sacred Heart Cathedral) other than the Debtor as opposed to the liability of the Debtor, Perpetrator or other Non-Debtor;

(viii) any Catholic Entity (including Sacred Heart Cathedral) other than the Debtor is liable for, or otherwise obligated to pay, with respect to any Tort Claim;

(ix) that the conduct of any Person or Entity in connection with the negotiation, development and/or implementation of the Plan and other Confirmation Documents is consistent with any requirement of any Insurance Policy or otherwise reasonable or appropriate; or

(x) that any tender of claims to a Non-Settling Insurer is appropriate or effective under applicable State law.

The determination or Resolution for Payment by the Special Arbitrator or Settlement Trustee with respect to a Tort Claim shall have no presumption, preclusive, *res judicata* or collateral estoppel effect against a Non-Settling Insurer.

If the Plan or other Confirmation Document is argued, cited, offered or used in connection with any Insurance Claim, Contribution Action or other litigation concerning an Insurance Policy or obligations of a Non-Settling Insurer for any purpose not prohibited by this Section 13.7, only the relevant portions of the Plan or other Confirmation Document shall be argued, cited, offered or used and the Plan shall have the status of a private contract with no judicial approval and the court or trier of fact shall be so advised. A Confirmation Document may be used to show the terms of the settlement between the Diocese and the Parishes (including Sacred Heart Cathedral), but only to the extent such settlement is not shown in any other document and only the relevant portions of the Document may be used for that purpose.

The rights and obligations of the Debtor, the Settlement Trust (including the Special Arbitrator and Settlement Trustee), the Reorganized Debtor, the Non-Settling Insurers, and any Non-Debtor, any Contribution Action or other litigation pertaining to an Insurance Policy coverage or Non-Settling Insurer obligations shall be determined by a Court of competent jurisdiction under the Insurance Policies and applicable law.

The Debtor shall seek to include this Section 13.7 in the Confirmation Order.

13.8    <u>Operative Documents</u>. The Committee and after his appointment, the Settlement Trustee will prepare any documents which are necessary or appropriate to execute the Plan or provided for under the Plan, and shall provide the Committee with a reasonable opportunity to review such documents prior to their execution. The Reorganized Debtor shall

execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan. If there is any dispute regarding the reasonableness or propriety of any such documents after reasonable and good faith efforts by the Reorganized Debtor, and after his or her appointment, the Settlement Trustee and the Committee, to negotiate and obtain approval of the documents by the other affected Person(s), any such dispute shall be determined by the Bankruptcy Court.

13.9   Compromise of Controversies. In consideration for the classification, distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Court's approval of each of the compromises and settlements provided for in the Plan, and the Court's findings shall constitute its determination under the standards of Bankruptcy Rule 9019 that such compromises and settlements are in the best interests of the Debtor and the Estate. The Debtor expressly reserves the right (with Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle other Claims up to and including the Effective Date.

The Diocese, on behalf of itself and the Catholic Entities, agrees that (a) it will not obtain payment from any Non-Settling Insurer of any amount that is recoverable from the Settlement Trust by such Non-Settling Insurers; and (b) in the event a Non-Settling Insurer obtains a judgment that it is entitled to obtain a recovery from the Settlement Trust as a result of any claim for contribution, subrogation, indemnification or other similar claim, the Diocese and Catholic Entities will voluntarily reduce their judgment claim, or settlement with, such Non-Settling Insurer to the extent necessary to eliminate such contribution, subrogation or indemnification claim against the Settlement Trust and the Reorganized Debtor shall indemnify, defend and hold the Settlement Trust harmless from and against all Claims arising out of or related to any Enjoined Claims or arising out of or related to the Settlement Agreement.

13.10   Exemption from Transfer Taxes. Pursuant to §1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of notes or equity securities, (b) the creation or

recordation of any mortgage, deed of trust, lien, pledge or other security interest, (c) the making or assignment of any lease or sublease, or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including, without limitation, any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, transfers of real and personal property from the Debtor to the Settlement Trust or Settlement Trustee, transfers of real and personal property from the Settlement Trust or Settlement Trustee to a third party and transfers of tangible property, will not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, or other similar tax. Any transfers pursuant to this Plan shall not be subject to any such taxes, and the Confirmation Order shall direct the appropriate state or local government officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

13.11   Return of Deposits. To the extent that the Debtor was required to and did pay deposits to any Creditors after the Petition Date as a condition of or as security for continued service after the Petition Date, including, but not limited to, deposits paid to utility companies for adequate assurance of payment pursuant to Bankruptcy Code §366, then, upon satisfaction of the Claims of such Creditor(s) pursuant to the Plan, any such deposits, together with any interest or other income earned thereon, if any, shall be refunded to the Reorganized Debtor within fifteen (15) days immediately paid to the Settlement Trustee

13.12   Chancery Property. Prior to the Effective Date, the Diocese shall remain in possession of the Chancery. After the Effective Date, the Chancery shall be transferred to the Settlement Trustee pursuant to a standard form of Iowa deed and the Reorganized Debtor shall remain in possession of the Chancery property and shall pay all occupancy costs during its possession in lieu of rent. The Settlement Trustee shall provide at least ninety (90) days notice prior to terminating the Reorganized Debtor's right of occupancy and possession of the Chancery. Within ninety (90) days after the receipt of any such written notice from the

Settlement Trustee, the Reorganized Debtor shall vacate and surrender possession of the Chancery property to the Settlement Trustee. All marketing and sales decisions with respect to the Chancery shall be under the control of the Settlement Trustee. The Reorganized Debtor shall provide reasonable access to the Settlement Trustee and its agents for marketing purposes and shall provide reasonable access and opportunity to copy all records relating to the Chancery.

13.13   <u>Avoidance Actions</u>. The Settlement Trustee shall have all of the rights and remedies of the Debtor and the Reorganized Debtor as of the Effective Date with respect to, and may commence and prosecute, any Avoidance Action. Notwithstanding the foregoing, all claims and causes of action pursuant to Sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code against any Settling Insurer shall be deemed released and forever discharged as of the Effective Date.

**ARTICLE 14**
**<u>DISTRIBUTIONS</u>**

14.1   <u>Distributions on Business Days</u>. Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

14.2   <u>Interest on Claims</u>. Unless otherwise specifically provided for in this Plan or the Confirmation Order, post-petition and post-Confirmation interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

14.3   <u>Delivery of Distributions; Unclaimed Distributions</u>. Distributions to holders of Allowed Claims shall be made at the addresses set forth in the records of Debtor or Reorganized Debtor or the Settlement Trust unless: (a) such addresses are superseded by any proofs of claim or transfers of Claim that may be filed pursuant to Bankruptcy Rule 3001 or (b) if the holder of an Allowed Claim has an attorney of record, then the Distribution shall be delivered to the attorney of record and payable jointly to counsel of record and the holder of the Allowed Claim. If the distribution to any holder of an Allowed Claim is returned to the Reorganized Debtor or the Settlement Trust as undeliverable or is otherwise unclaimed, or the check for the distribution

is not presented for payment, no further distributions shall be made to such holder unless and until the Reorganized Debtor or Settlement Trust is notified in writing of such holder's then current address. The Reorganized Debtor or Settlement Trust shall make all distributions that have become deliverable or have been claimed as soon as practicable after such distribution has become deliverable. Any holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed distribution, or present the check for the distribution for payment, within 180 days after the date of such distribution shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against Debtor or Reorganized Debtor or Settlement Trust or their property, and Reorganized Debtor or Settlement Trust shall stop payment on any such check. Nothing contained in this Plan requires Debtor or Reorganized Debtor or Settlement Trust to attempt to locate any holder of an Allowed Claim.

14.4    De Minimis Payments. Notwithstanding any other provision of this Plan, De Minimis Payments need not be made by the Reorganized Debtor or Settlement Trust on account of any Allowed Claim; provided that De Minimis Payments that would otherwise be made on the applicable Distribution Date shall carry over until the next Distribution Date until the cumulative amount of distributions to which the holder of such Allowed Claim is more than a De Minimis Payment, at which time the cumulative amount of such distributions shall be paid to such holder. De Minimis Payments that will not be distributed as of the final Distribution Date for a Class shall be treated as undeliverable distributions as provided above.

## ARTICLE 15
## TREATMENT OF EXECUTORY CONTRACTS

15.1    Motion to Assume and Reject. The Plan constitutes a motion to assume and reject Executory Contracts. Upon confirmation of the Plan and without any further act, the Debtor shall be deemed to have rejected all Executory Contracts not previously assumed or rejected or not listed in Schedule 15.1, if any, and shall be deemed to have assumed all Executory Contracts listed in Schedule 15.1.

43

15.2    Rejection Claims. Any Claim arising from the rejection of an Executory Contract is a Class 6 Claim to the extent it is an Allowed Claim. Any entity holding a Claim based upon the rejection of an Executory Contract pursuant to this Section 15 must file a Proof of Claim with the Bankruptcy Court within 30 days after the Effective Date. The failure of any such entity to file a Proof of Claim within the specified time period will result in the disallowance of such Claim.

## ARTICLE 16
## SATISFACTION AND CANCELLATION OF INDEBTEDNESS

The provision made to the holders of Allowed Claims provided for in the Plan shall be in full and complete satisfaction of their Allowed Claims. Except for purposes of evidencing a right to distribution under the Plan, on the Effective Date, all notes, guarantees, or other instruments or documents evidencing or creating any indebtedness or obligations of, or interests in, Debtor, except (a) all assumed Executory Contracts, and/or (b) all other notes or other instruments evidencing indebtedness or obligations of Debtor that are unimpaired, restated, or amended and restated under this Plan, shall be cancelled and terminated and of no further force or effect.

## ARTICLE 17
## CONDITIONS TO EFFECTIVE DATE

17.1    Debtor's Conditions to Occurrence of Effective Date. Each of the following is a condition to the occurrence of the Effective Date, which conditions must be satisfied or waived by each of the Debtor and the Committee:

17.1.1 The Confirmation Order has been entered by the Bankruptcy Court and has not been stayed.

17.1.2 The Confirmation Order is in form and substance satisfactory to the Debtor, the Committee, Settling Insurers, and the Unknown Tort Claims Representative.

17.1.3 All actions, documents, and agreements necessary to implement the Plan will have been effected or executed.

17.1.4 The Bankruptcy Court shall have entered a Final Order approving all Insurance Settlements and Settlement Agreements submitted to the Bankruptcy Court prior to the conclusion of the Confirmation Hearing.

17.1.5 Funding of the Settlement Trust and transfer of the Chancery to the Settlement Trustee.

17.2 <u>Deadline for Satisfaction of Conditions; Effect of Failure to Satisfy Conditions</u>. All conditions to the Effective Date must be satisfied or waived no later than July 1, 2008. If the Effective Date has not occurred by July 1, 2008, the Confirmation Order shall be vacated automatically unless the Debtor and the Committee agree in writing to extend the deadline.

## ARTICLE 18
## EFFECTS OF CONFIRMATION

18.1 <u>Discharge</u>. Except as otherwise expressly provided in the Plan or in the Confirmation Order and subject to Section 13.7, on the Effective Date pursuant to section 1141(d) of the Bankruptcy Code the Debtor and the Reorganized Debtor shall be discharged from and its liability shall be extinguished completely in respect of any Claim, including Tort Claims and Unknown Tort Claims, but excluding, to the extent permitted by the Bankruptcy Code, any Post-Petition Abuse Claims which shall not be discharged. Notwithstanding, the foregoing, (i) nothing in this Plan shall discharge any obligations of the Debtor or Reorganized Debtor under the Settlement Agreements and such obligations shall survive Confirmation of the Plan, and (ii) nothing herein will impair, effect or release the rights of any Non-Settling Insurer with respect to any Tort Claims, including all Insurance Company Defenses.

18.2 <u>Channeled Claims</u>. On and after the Effective Date, and subject to Section 13.7, and the assertion of Insurance Company Defenses, and in consideration of: (a) the promises and obligations of the Diocese and Catholic Entities under the Plan, including, without limitation, the funding of the Settlement Trust; and (b) the undertakings of Settling Insurers pursuant to the Insurance Settlements and Settlement Agreements, all Persons and Entities who have held or asserted, hold or assert, or may in the future hold or assert any Tort Claim,

including without limitation Unknown Tort Claims, shall be forever barred from pursuing such Tort Claims, including Unknown Tort Claims, against the (i) Diocese, Catholic Entities, and their respective past, present and future predecessors, successors, officials, shareholders, subsidiaries, parents, officers, directors, employees, servants, volunteers, representatives, attorneys, merged or acquired companies or operations or assigns, but excluding only the Perpetrators; and (ii) the Settling Insurers and their respective past, present and future predecessors, successors, officials, shareholders, subsidiaries, parents, divisions, affiliates, members, officers, directors, employees, servants, volunteers, representatives, attorneys, merged or acquired companies or operations or assigns, but excluding only the Perpetrators; (collectively, the "Settling Parties") in each case based upon or in any manner arising from or related to any acts or omissions of any of the Settling Parties related to any Abuse or alleged Abuse including, but not limited to: (i) for damages of any type, including but not limited to bodily injury, personal injury, emotional distress, wrongful death, and/or loss of consortium; (ii) for exemplary or punitive damages; (iii) for attorneys' fees and other expenses, fees or costs; and (iv) for any remedy at law, in equity or admiralty whatsoever, heretofore, now or hereafter asserted against any of the Settling Parties.; and all Tort Claims, including Unknown Tort Claims, shall be channeled to and shall be treated, administered, determined, and, if Allowed, paid under the procedures and protocols and in the amounts as established under the Plan and the Settlement Trust as the sole and exclusive remedy for all Tort Claimants, including all Unknown Tort Claimants. The forgoing channeling provisions are an integral part of the Plan and essential to its consummation and implementation. It is intended that the channeling of the Tort Claims as provided in this Plan shall inure to and for the benefit of the Settling Parties and shall not, directly or indirectly, inure to or for the benefit of any Non-Settling Insurer.

18.3    Exculpation and Limitation of Liability. Subject to Section 13.7 and the assertion of Insurance Company Defenses, neither the Debtor, the Reorganized Debtor, the Committee, the Unknown Tort Claims Representative, the Settlement Trustee, the Special Arbitrator, the Settling Insurers, nor any of their respective present or former members,

46

managers, officers, directors, employees, advisors, attorneys, or agents acting in such capacity will have or incur any liability to, or be subject to any right of action by, any holder of a Claim (including a Unknown Tort Claim) or any other party-in-interest or any of their respective agents, employees, representatives, financial advisors, attorneys, affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Reorganization Case, the pursuit of confirmation of the Plan, or the administration of the Plan or Settlement Trust, or the property to be distributed under the Plan or Settlement Trust, except for their willful or intentional misconduct; and in all respects such parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or the Settlement Trust or in the context of the Reorganization Case.

18.4    Permanent Injunction Against Prosecution of Channeled Claims. Subject to Section 13.7 and the assertion of Insurance Company Defenses, on and after the Effective Date and for the consideration described in the Plan and in Section 18.2, all Persons and Entities who have held or asserted, hold or assert, or may in the future hold or assert a Channeled Claim are hereby permanently stayed, enjoined, and restrained from taking any action, directly or indirectly for the purposes of asserting, enforcing or attempting to assert of enforce any Channeled Claim, including: (a) commencing or continuing in any manner, any action or any other proceeding of any kind with respect to any Enjoined Claim or Channeled Claim against any Settling Parties or the property of the Settling Parties; (b) seeking the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Settling Parties or the property of the Settling Parties, with respect to any Enjoined Claim or Channeled Claim; (c) creating, perfecting, or enforcing any encumbrance or lien of any kind against any Settling Parties or the property of any Settling Parties with respect to any Enjoined Claim or Channeled Claim; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Settling Parties with respect to any Enjoined Claim or Channeled Claim; and (e) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan. In the event any

Person or Entity takes any action that is prohibited by, or is otherwise inconsistent with the provisions of this Section 18.4, the Plan or Confirmation Order, then, upon notice to the Court by an affected Party, the action or proceeding in which the Claim of such Person or Entity is asserted will automatically be transferred to the Bankruptcy Court or the U.S. District Court for enforcement of the provisions of this Section 18.4, the Plan or Confirmation Order.

18.5    Settling Insurer Injunction. On and after the Effective Date and for the consideration provided under the Plan, the Insurance Settlements and Settlement Agreements, all Persons and Entities who have held or asserted, hold or assert, or may in the future hold or assert an Enjoined Claim are hereby permanently stayed, enjoined, and restrained from taking any action, directly or indirectly for the purposes of asserting, enforcing or attempting to assert of enforce any Enjoined Claim, including:  (a) commencing or continuing in any manner, any action or any other proceeding of any kind with respect to any Enjoined Claim against any Settling Insurer, and its respective predecessors, successors, officials, shareholders, subsidiaries, parents, divisions, affiliates, members, officers, directors, employees, representatives, attorneys, merged or acquired companies or operations or assigns (collectively, the "Settling Insurer Parties") or the property of the Insurer Parties; (b) seeking the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Insurer Parties or the property of the Insurer Parties, with respect to any Enjoined Claim; (c) creating, perfecting, or enforcing any encumbrance or lien of any kind against any Insurer Parties or the property of any Insurer Parties with respect to any Enjoined Claim; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Insurer Parties with respect to any Enjoined Claim; and (e) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan or Settlement Agreement. In the event any Person or Entity takes any action that is prohibited by, or is otherwise inconsistent with the provisions of this Section 18.5, the Plan or Confirmation Order, then, upon notice to the Court by an affected Party, the action or proceeding in which the Claim of such Person or Entity is asserted will automatically be transferred to the Bankruptcy Court or

the U.S. District Court for enforcement of the provisions of this Section 18.5,  the Plan or Confirmation Order.

18.6    Insurer Contribution Claim Reduction.  Notwithstanding Section 18.5, a Non-Settling Insurer may assert an Insurer Contribution Claim as a defense or counterclaim against the Reorganized Debtor (or other Person or Entity seeking coverage or Insurance Recoveries in any Contribution Action or Insurance Claim), and the Reorganized Debtor (or any other Person or Entity seeking coverage or Insurance Coverage) may assert the legal or equitable rights, if any, of the Settling Insurer in any such claim or action.  In the event that a Non-Settling Insurer obtains a judicial determination or binding arbitration award that such Insurer Contribution Claims are valid, the liability (if any) of such Non-Settling Insurer to the Reorganized Debtor or any other Person or Entity shall be reduced by the amount of such Insurer Contribution Claims and no Settling Insurer shall be liable for any such Insurer Contribution Claims.

18.7    Term of Injunctions or Stays and Confirmation of Insurance Settlements. All injunctions or stays provided for in this Plan and Confirmation Order, the injunctive provisions of sections 524 and 1141 of the Bankruptcy Code, and all injunctions or stays protecting Settling Parties and Insurer Parties are permanent and will remain in full force and effective following the Effective Date forever.

18.8    No Release of Perpetrators. Subject to Section 18.5, none of the provisions of this Plan, the Confirmation Order, or the Settlement Agreements or orders approving the Settlement Agreements with the Settling Insurers entered in this case affect the rights of a Tort Claimant to pursue a claim or recovery against a Perpetrator.

## ARTICLE 19
## MODIFICATION OF PLAN

The Plan may be modified by the Debtor from time to time in accordance with, and pursuant to, Bankruptcy Code §1127. The Plan may be modified by the Debtor at any time before the Confirmation Date, provided that the Plan, as modified, meets the requirements of Bankruptcy Code §§1122 and 1123, and the Debtor has complied with Bankruptcy Code §1125,

provided that an acceptance of the Plan by the holder of an impaired Claim constitutes an acceptance of any subsequent modifications of the Plan which are determined by the Bankruptcy Court not to materially and adversely affect or impair the interests of Creditors..

## ARTICLE 20
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

20.1     <u>Objections to Claims Other Than Tort Claims</u>. As of the Effective Date, Reorganized Debtor shall acquire all defenses, counterclaims and setoffs, whether equitable or legal to Claims, which are not Tort Claims, held or asserted to be held against Debtor. An objection to the allowance of such Claim shall be in writing and shall be filed with the Bankruptcy Court by Debtor, Reorganized Debtor or any other party in interest. The party filing such objection shall have the right to assert the Reorganized Debtor's defenses, counterclaims and setoffs, whether equitable or legal, and shall prosecute each of its objections to such a Claim until determined by a Final Order unless such party (a) compromises and settles an Objection by written stipulation, or (b) withdraws an objection with approval of the Bankruptcy Court. Notwithstanding any other provision in the Plan, no payment or Distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim. Objections to Claims, which are not Tort Claims, shall be filed and served no later than ninety (90) days after the Confirmation Order.

20.2     <u>Disputed Distribution</u>. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any distribution, the Reorganized Debtor or the Settlement Trust may, in lieu of making such Distribution to such holder, make such distribution into an escrow account until the disposition shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to the dispute.

20.3     <u>Ex Parte Approval</u>. The Debtor or Reorganized Debtor shall be authorized to settle objections to Claims, except Class 7 Tort Claims, of non-insiders or applications for payment of Administrative Expenses Claims (other than for fees and expenses of a Professional Person) in settlement amounts of less than $1,000, ex parte and without notice to any party.

## ARTICLE 21
## RETENTION OF JURISDICTION

21.1    <u>Retained Jurisdiction</u>. Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of the Plan are implemented until entry of an order closing the Case. Without limiting the generality of the foregoing, the Court shall retain jurisdiction of the following contested matters and proceedings.

21.1.1  Allowing any Administrative Expense Claim.

21.1.2  Hearing and determining any objection to a Claim, except a Tort Claim.

21.1.3  Hearing and determining any Avoidance Action brought by the Debtor, the Reorganized Debtor, or the Settlement Trustee.

21.1.4  Hearing and determining all causes of action, controversies, disputes, or conflicts between or among the Debtor or Reorganized Debtor, the Settlement Trust, or any other party, including those pending prior to Confirmation, provided that this retention of jurisdiction does not pertain to any Insurance Claim or Contribution Action against a Non-Settling Insurer or any action concerning any Insurance Policy issued or alleged to have been issued to a Non-Debtor by a Non-Settling Insurer. The Court shall determine its jurisdiction over such matters if and when they are presented.

21.1.5  Correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purpose and intent of the Plan.

21.1.6  Hearing and determining any actions brought by the Debtor or Reorganized Debtor to protect Debtor, the Estate, or Reorganized Debtor or Settling Party, or the Settlement Trustee to protect the Settlement Trust or a Settling Insurer to protect a Settling Insurer Party.

21.1.7  Issuing any order necessary to interpret, effectuate or implement the Plan or Confirmation Order, including, without limitation, such declaratory and injunctive

orders as are appropriate to protect the Debtor, the Estate, the Reorganized Debtor, Catholic Entities, Settling Insurers or the Settlement Trust.

21.1.8   Hearing and determining any dispute relating to the terms or implementation of the Plan, Confirmation Order, or the Settlement Trust, or to the rights or obligations of any parties in interest with respect thereto.

21.1.9   Authorizing the modification of the Plan after Confirmation pursuant to the Bankruptcy Code.

21.1.10   Entering orders and decrees concluding and terminating the Case.

21.1.11   Determine any and all motions regarding assumption or rejection of Executory Contracts and any and all Claims arising therefrom.

21.1.12   Enforce any of the provisions of the Plan and Settlement Trust.

21.1.13   A hearing and determining any motions brought by the Reorganized Debtor seeking approval of a proposed Insurance Settlement and Settlement Agreement after the Effective Date pursuant to Bankruptcy Rule 9019 or such other provisions of the Bankruptcy Code or Bankruptcy rules as may be set forth in any such Settlement Agreement.

21.2   The Bankruptcy Court will retain jurisdiction over the Settlement Trust after the closing of the Reorganization Case.

21.3   The Debtor hereby waives any constitutional or statutory defenses to the implementation and enforcement of this Plan based on any assertion that such enforcement burdens or impairs their rights, or the rights of any other person, to the free exercise of their religion.

### ARTICLE 22
### REORGANIZATION OF DEBTOR

22.1   <u>Continued Corporate Existence</u>. Reorganized Debtor shall continue to exist as an Iowa non-profit corporation in accordance with the laws of the State of Iowa and pursuant to its Articles of Incorporation and Bylaws in effect on the Effective Date. On and after the Effective

Date, Reorganized Debtor may operate its business and may use, acquire and dispose of property without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Court except as provided in this Plan.

22.2   Management of Reorganized Debtor. From and after the Effective Date, the Reorganized Debtor will continue to be managed by its Board of Directors in accordance with applicable law.

## ARTICLE 23
## GENERAL PROVISIONS

23.1   Administrative Expense Claims Bar Date. The deadline for filing Claims entitled to priority pursuant to §§507(a)(2) and 503(b) of the Bankruptcy Code incurred prior to the Effective Date, with the exception of Administrative Expense Claims for fees and costs of a Professional Person, Allowed Ordinary Course Administrative Expense Claims, and Post Petition Abuse Claims, shall be thirty (30) days following Confirmation. Failure to file a Claim by this date shall conclusively bar the claimant from asserting his Claim, which Claim shall be forever discharged; provided that Post Petition Abuse Claims are subject only to applicable statutes of limitations; and provided further that in consideration for exclusion of Post Petition Abuse Claims from discharge under Section 18.1 and from the Claims filing deadline established by this Section 23.1, no Allowed Administrative Expense Claims for fees and costs of a Professional Person or Allowed Ordinary Course Administrative Expense Claims shall be subject to disgorgement for the benefit of holders of Post Petition Abuse Claims.

23.2   Pre-Effective Date Professional Fees and Administrative Expense Claims. Applications for final approval of compensation for services rendered and reimbursement of expenses incurred by a Professional Person through the Effective Date shall be filed on or before 60 days after the Effective Date. All unpaid pre-Effective Date Professional Fees of the Debtor, Reorganized Debtor, the Committee, and the Unknown Tort Claims Representative shall be paid from the Settlement Trust Reserve as a Settlement Trust Cost and Expense.

Any Administrative Expenses Claims (other than Ordinary Course Administrative Expense Claims which will be paid the Reorganized Debtor), including, without limitation, those incurred in connection with the Reorganization Case (such as mediation expenses and U.S. Trustee's fees relating to the settlement distribution), Professional Fees, costs and expenses incurred by Committee, Unknown Tort Claims Representative, Settlement Trust or Special Arbitrator, if Allowed, shall be paid from the Settlement Trust Reserve as part of a Settlement Trust Cost and Expenses.

23.3     Post Effective Date Professional Fees. Except as provided by Section 11.8, any Professional Fees incurred by the Reorganized Debtor after the Effective Date shall be paid by the Reorganized Debtor and need not be submitted to the Bankruptcy Court for approval. Any Claims for fees, costs, and expenses incurred by the Special Arbitrator, the Settlement Trustee, the Unknown Tort Claims Representative, the Committee, and Professional Fees incurred by the Special Arbitrator, the Settlement Trustee, the Unknown Tort Claims Representative, the Committee, or the Debtor or the Reorganized Debtor pursuant to Section 11.8 (collectively the "Post Effective Date Fees") shall be treated as part of the Settlement Trust Costs and Expenses and shall be paid by the Settlement Trust, without further Court order but subject to ten (10) days notice to the Office of the United States Trustee. Employment of Professional Persons by the Special Arbitrator or the Settlement Trustee shall be subject to Bankruptcy Court approval pursuant to §§327 and 328 of the Bankruptcy Code and Bankruptcy Rules 2014. If the Settlement Trust Reserve is not sufficient to pay Post Effective Date Fees approved by the Bankruptcy Court, the excess shall be paid from the Matrix Fund, the Litigation Fund and the Non Releasing Litigation Fund in proportion to the amounts allocated to such Funds.

23.4     Substantial Consummation. The Plan shall be deemed substantially consummated on the Effective Date if Debtor and Reorganized Debtor have performed all obligations required to be performed by the Effective Date.

23.5     Payments and Reports to U.S. Trustee. Reorganized Debtor and the Settlement Trust shall timely make all payments required under this Plan. Without limiting the

generality of the foregoing, Reorganized Debtor shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6) following Confirmation until the case is closed. After Confirmation, Reorganized Debtor shall serve on the United States Trustee quarterly a financial report for each quarter (or portion thereof) the case remains open. The quarterly financial report shall include a statement of all disbursements made during the course of the quarter, whether or not pursuant to the Plan. After the Effective Date, the Reorganized Debtor shall no longer subject to the supervision of the United States Trustee and shall no longer be required to file monthly statements, operating reports or pay quarterly fees.

23.6   Stay of Confirmation Order Shall Not Apply. The stay of enforceability of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall not apply, and the Confirmation Order shall be enforceable according to its terms immediately upon entry absent further order of the Court.

23.7   Governing Law. Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Iowa, without giving effect to its conflicts of law principles or canon law.

23.8   Extension Of Payment Dates. If any payment date falls due on any day which is not a Business Day, then such due date shall be extended to the next Business Day.

23.9   Notices. Any notice required or permitted to be provided under the Plan shall be in writing and served by regular first class mail, overnight delivery, or hand-delivery.

23.10   Closing of the Case. At such time as the Plan has been fully administered and/or the Plan has been substantially consummated, the Reorganized Debtor will file an application for Final Order and Decree. The Reorganized Debtor will file an application for Final Order and Decree with notice to only those Creditors and Persons who have filed requests for notice at any time after the Effective Date, after which a Final Order and Decree approving the

Reorganized Debtor's final report and closing the Reorganization Case may be entered. Exercise of the Bankruptcy Court's continuing jurisdiction and matters related to the Settlement Trust shall not require that the Bankruptcy Case be reopened.

23.11  Interest. Whenever interest is to be computed under the Plan, interest shall be simple interest and not compounded.

23.12  Additional Assurances. The Debtor, the Reorganized Debtor, the Settlement Trustee, the Committee and the Persons holding Claims herein will execute such other further documents as are necessary to implement any of the provisions of the Plan.

23.13  Cramdown. The Debtor hereby requests, if necessary, confirmation of the Plan pursuant to Bankruptcy Code §1129(b) with respect to any impaired Class of Claims which does not vote to accept the Plan.

23.14  Fractional Dollars. Notwithstanding any other provision of the Plan, no payments or distributions under the Plan of or on account of fractions of dollars shall be made. When any payment or distribution of or on account of a fraction of a dollar to any holder of an Allowed Claim would otherwise be required, the actual payment or distribution made will reflect a rounding of such fraction to the nearest whole number (up or down).

23.15  Dissolution of Committees and termination of Unknown Tort Claims Representative. On the Effective Date, the Committee shall be dissolved. The Unknown Tort Claims Representative's appointment shall be terminated on the Effective Date.

23.16  Headings. The headings of the articles, paragraphs, and section of the Plan are inserted for convenience only and will not affect the interpretation hereof.

23.17  Successors and Assigns. The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding upon, and will inure to the benefit of, the heirs, executors, administrators, successors or assigns of such Person.

## ARTICLE 24
## NON MONETARY UNDERTAKINGS OF DEBTOR

24.1    The Reorganized Debtor will undertake the following non-monetary obligations within thirty (30) days after the Effective Date, unless otherwise noted.

24.2    To the extent that currently ongoing investigations credibly show that the subjects of the investigation Abused any Person, the names of those additional Perpetrators shall be publically released.

24.3    For a period of at least nine (9) years after the Effective Date, or such longer time recommended by the U.S. Catholic Conference of Bishops, the Diocese will post on its web site a prominent link on the home page to the names of ALL known Perpetrators (admitted, proven or credibly accused), including deceased Perpetrators and those previously listed.

24.4    Within one (1) year after the Effective Date, or as soon as reasonably practical (but no longer than two (2) years), the Bishop of the Diocese of Davenport will personally visit each parish in which Abuse occurred (based on information provided in proofs of claim filed in the Diocese's bankruptcy case and other information known to the Diocese) or where Perpetrators served. The Bishop will publicly identify Perpetrators that served in the parish and will encourage all Abuse survivors to report abuse to local law enforcement, the Diocese Victim Assistance Coordinator, health care professionals or other trusted person. The Bishop's visit to the parishes will be scheduled and publicized in parish bulletins and the Catholic Messenger at least thirty (30) days in advance. At least thirty (30) days in advance, the Diocese will invite all known survivors of Abuse in that parish to attend. The Bishop shall provide time for a forum/discussion during his visit to address parishioner questions and comments.

24.5    For nine (9) years after the Effective Date, the Diocese shall provide information in parish bulletins and the Catholic Messenger (or its equivalent) with contact information for the Diocese's Victims Assistance Coordinator, and will encourage Abuse survivors to contact a health care professional for assistance in finding any needed mental health support or counseling.

24.6    Debtor will publish in the Catholic Messenger four times per year for five (5) years and one time per year for twenty (20) years thereafter, a prominent statement urging Abused Persons to contact law enforcement (the police department and/or the county attorney's office), the Diocesan Victim's Assistance Coordinator,  doctor or other health care professional or other trusted person to make a report of any Abuse.

24.7    The Bishop of the Diocese of Davenport will publicly support a complete elimination of all criminal statutes of limitation for child sexual abuse committed by clergy or others in similar positions of authority.

24.8    For (2) years after the Effective Date, the Debtor will allow any Allowed Tort Claimant (other than persons with allowed Convenience Claims) to speak publicly in the parish where he/she was Abused at a time mutually agreed upon by the Tort Claimant, the Diocese, and the parish. Any Tort Claimant who wishes to so speak publicly shall be entitled to speak on no more than one occasion about his/her Abuse. Reasonable notice of the occasion, time, and place of his or her presentation shall be given by the Diocese and the parish to parishioners.

24.9    The Debtor will make available reasonable space (approximately 300 words or ¼ page) in each issue of the Catholic Messenger for two (2) years after the Effective Date to Allowed Tort Claimants (other than persons with Convenience Claims) to publish stories of their Abuse.

24.10    The Diocese and its representatives (including, but not limited to, the Bishop, the Diocese's spokespersons, and all priests and pastors), will not refer either verbally or in print to the Tort Claims or Tort Claimants as "alleged" claims, "alleged" victims or "alleged" survivors.

24.11    Within a reasonable time after the allowance of any Tort Claim, the Bishop will send letters of apology to any Tort Claimant who requests a letter or, if requested by immediate family members. Letters of apology will state that the survivor was not at fault for the Abuse and that the Diocese takes responsibility for the Abuse. The letters of apology will be personally signed by the Bishop and all members of the Diocese's Board of Directors.

24.12    All Confidentiality Agreements involving sex abuse survivors shall terminate on the Effective Date to the extent that perpetrators' names, Church knowledge of

58

abuse, and any other information (other than the abuse survivors' name, address, family members, and other personally identifying information) may be made public.

24.13    The Diocese shall continue to provide its outreach program for survivors of Abuse. The Victim Assistance Coordinator will report to the review board established under procedures required by the U.S. Catholic Conference of Bishops.

24.14    On a regular and continuing basis announcements and information shall be given in writing and in church, and in schools regarding the prevention of Abuse, training to indentify signs of Abuse, statements that the Abused are not at fault, and encouraging the reporting of Abuse or potential Abuse to law enforcement, the county attorney or Victims Assistance Coordinator.

24.15    The Diocese will adopt a whistle blower policy concerning the method by which a report concerning Abuse within the Diocese can be made and expressly providing that the Diocese will not take any retaliatory actions against persons who report such information in good faith.

24.16    The Bishop and all priests working within the Diocese shall make a written statement that they have not sexually abused any minor at any time and have no knowledge that any other priest or employee of the Diocese has Abused any Person or that such knowledge of any Abuse has been reported to law enforcement and county attorney and the Victim's Assistance Coordinator. Each statement shall be signed and dated under penalty of perjury. A copy of this signed and dated statement shall be retained in each priest's personnel file in perpetuity.

24.17    The Diocese shall post a plaque prominently displayed in each school in the Diocese stating: "The abuse of the spiritual, emotional, and moral development of the young men and women of "Regina High School" (or other school name, as appropriate) shall not be tolerated." The dimensions of these plaques shall be no less than 8.5 inches by 11 inches. At Regina High School, the plaques shall be placed next to the door of the principal's office. These plaques shall not be obstructed by plants, furniture, or any other items.

24.18    The Diocese shall make a full written report to the Apostolic Nuncio for appropriate action be taken with respect to Bishop Soens.

59

## ARTICLE 25
## REQUEST FOR CONFIRMATION

The Debtor requests entry of a Confirmation Order pursuant to §1129 of the Bankruptcy

Code.

Dated April 3, 2008

LANE & WATERMAN LLP                    DIOCESE OF DAVENPORT

By:   /s/ Richard A. Davidson          By  /s/ Charlene Masske
      Attorney for Diocese of Davenport     Chief Financial Officer
      220 N. Main Street, Suite 600
      Davenport, IA 52801
      563-333-6624
      563-324-3246 Fax
      rdavidson@l-wlaw.com

60